Clarence Herbert **SANDERS**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 416–70.

United States Court of Appeals,
Tenth Circuit.

April 21, 1971.

Rehearing Denied May 13, 1971.

Frank Dubofsky, Boulder, Colo., for appellant.

James A. Pusateri, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for appellee.

Before JONES,* HILL and McWIL-LIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Sanders was charged in each count of a two count indictment with a violation of 26 U.S.C. § 5861(d) which makes it unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record. Count 1 of the indictment alleges Sanders' nonregistered possession of a sawed-off shotgun; count 2 relates to Sanders' nonregistered possession of a sawed-off rifle, with both "possessions" allegedly occurring on the same date. Upon trial Sanders was convicted on both counts, and he was thereafter sentenced to a term of five years on each count, the two terms to be served consecutively, and not concurrently. Sanders now seeks reversal of the judgments thus entered.

Brief reference to the evidence adduced upon trial will assist in a better understanding of the several grounds advanced here by Sanders as to why his convictions should be reversed. Two police officers testified that they observed Sanders, with a black attache case in hand, enter an automobile in which there were three oc-

* Of the Fifth Circuit, sitting by designation.

cupants at about two o'clock in the morning. The officers then followed the automobile in question and when the driver thereof ran a red traffic signal light, the officers proceeded to stop the vehicle. Each officer testified that as Sanders exited from the stopped car he tossed his attache case to the ground and that upon hitting the ground the case flew open and a sawed-off shotgun and a sawed-off rifle "came out of the case onto the sidewalk." Other testimony established that neither the shotgun nor the rifle were registered to Sanders in the National Firearms Registration and Transfer Record.

Sanders testified that the attache case was his but that the firearms were not. He stated that the shotgun and rifle in question belonged to the two occupants of the back seat of the automobile who had taken it upon themselves to use his attache case in their hurried efforts to conceal the guns from the police whom they all knew were following them.

Perhaps the principal contention asserted here by Sanders is that under the prosecution's evidence he may well have been guilty of one violation of 26 U.S.C. § 5861(d), but not two, and that he should not have been prosecuted and convicted on both counts of the indictment and given consecutive sentences therefor. In other words, Sanders argues that assuming his "possession" of the two nonregistered firearms, such constitutes but one violation of 26 U.S.C. § 5861(d). We do not agree.

■ In count 1 Sanders was charged with, and the prosecution's evidence established, prima facie, the unlawful possession of a sawed-off shotgun which was not registered to him in the National Firearms Registration and Transfer Record. Count 2 related to Sanders' possession of a sawed-off rifle which, according to the evidence, also was not registered to him in the National Firearms Registration and Transfer Record. We hold that such evidence supports Sanders' conviction on each count of the indictment and that each count charges a separate and distinct offense.

Pertinent provisions of the National Firearms Act Amendments of 1968 provide that there shall be maintained a central registry of all firearms in the United States which are not in the possession or under the control of the United States, which registry shall be known as the National Firearms Registration and Transfer Record. 26 U.S.C. § 5841. As for the statutory definition of a "firearm," see 26 U.S.C. § 5845. The statute then goes on to declare that "[e]ach manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes." 26 U.S.C. § 5841(b). It further provides that "[e]ach firearm transferred shall be registered to the transferee by the transferor." Finally, 26 U.S.C. § 5861, which is the particular section Sanders was charged with having violated, makes it unlawful for any person to receive or possess "*a* firearm which is not registered to him in the National Firearms Registration and Transfer Record." (Emphasis added.)

■■ It would appear to us that the legislative intent in this instance is quite clear and that "each firearm" constitutes a separate unit for the purposes of criminal prosecution. Thus, one who makes two unregistered firearms subjects himself to prosecution for two violations of the statute, not one, since each firearm must be registered. Similarly, if there be a transfer of two firearms in violation of the applicable provisions of the statute regarding transfer, there would be two violations of the statute. Finally, one who possesses two firearms, neither of which is registered to him in the National Firearms Registration and Transfer Record, has twice violated the provisions of 26 U.S.C. § 5861(d) and he may be prosecuted for each violation. The crimes commonly known as receiving stolen goods and carrying concealed weapons are not really analogous. Actually, under the applicable statute, it is not unlawful to possess a firearm, as such; rather, the real gravamen of the offense is to possess a firearm which has not theretofore been registered in the name of the transferee-possessor by prior af-

firmative action on the part of the transferor. And, according to the statute, each individual firearm is required to be registered by the manufacturer, importer, maker or transferor and, in like fashion, it is unlawful for one to possess *a* firearm not theretofore properly registered to him. To hold that one who possesses twelve nonregistered firearms, for example, should be treated as though he only possessed one, would in our view thwart the legislative intent on this subject and be an unwarranted application of the cheaper by the dozen principle. The legislative intent thus being quite clear, the policy of lenity argued for by Sanders does not come into play. Hence, we do not regard Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, as applicable. We regard our analysis of this particular matter to be within the general rationale of Rayborn v. United States, 234 F.2d 368 (6th Cir.), concerning the proper test for determining the identity of offenses. *See also* United States v. Melville, D.C., 309 F.Supp. 774.

■ Sanders next argues that the trial court erred in its instructions to the jury defining "actual" as contrasted to "constructive" possession, and "sole" as opposed to "joint" possession. We note there was no objection by counsel to these several instructions and certainly this is not such plain error as would warrant our consideration of the matter. In fact, under the circumstances, we do not regard the giving of these instructions as being error. It is at least arguable that Sanders' own testimony would permit the inference that he "constructively" and "jointly" possessed the firearms in question.

■ Prior to trial counsel filed a motion to suppress evidence. This motion, after hearing, was denied, and this ruling is now cited as error. In this regard the main thrust of counsel's argument is that the trial court intimidated counsel to the end that Sanders was not afforded a full and fair hearing on his motion. We do not so read the record. Counsel for Sanders called the two arresting officers and, as previously indicated, each testified that the reason for stopping the car was that the driver thereof had run a red signal light. Parenthetically, we note that Sanders' evidence upon trial also showed the commission of a traffic violation by the driver of the car in which Sanders was riding. Such being the state of the record, the argument that counsel for Sanders was somehow precluded from showing that this was only a "sham arrest" is without merit. On the record before it, the trial court could only have denied the motion to suppress and there is nothing to indicate that counsel was hamstrung in his efforts to suppress the introduction of the attache case and the firearms contained therein.

■ The suggestion that these convictions should be reversed because of the incompetence of trial counsel is also not supported by the record. As has been previously stated, the constitutional guaranty of assistance of counsel means effective legal assistance, as distinguished from bad faith, sham, pretense, or want of preparation and opportunity for conference. United States v. Davis, 10 Cir., 436 F.2d 679. However, success in the outcome of a criminal prosecution is not recognized as the test for determining the effectiveness of counsel. Trial strategy is often a matter of on-the-spot judgment and our study of the record leads us to conclude that Sanders was afforded his constitutional right to counsel. From the record we learn, incidentally, that Sanders himself at the time of sentencing advised the trial court that he was as of that moment, at least, well satisfied with the efforts of his trial counsel.

Sanders' argument that the registration requirements of the statute are in violation of the fifth amendment protection against self-incrimination is fully answered by United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). *See also* United States v. Black, 431 F.2d 524 (6th Cir.).

Judgment affirmed.