UNITED STATES of America, Plaintiff-Appellee,

v.

James W. ALVERSON, Defendant-Appellant.

No. 80–1864.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1981.

Decided Jan. 4, 1982.

---

Kenneth C. Cory, Gang, Berkley & Cory, Las Vegas, Nev., for defendant-appellant.

Brian L. Sullivan, Asst. U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before ADAMS,* SNEED and FLETCHER, Circuit Judges.

---

* The Honorable Arlin M. Adams, United States Circuit Judge for the Third Circuit, sitting by designation.

FLETCHER, Circuit Judge:

Defendant Alverson appeals both his conviction on four counts of possession of unregistered machine guns in violation of 26 U.S.C. § 5861(d) (1976) and his sentence. Defendant contends that the evidence was insufficient to sustain his conviction. He also raises several challenges to his sentence. We note jurisdiction under 28 U.S.C. § 1291 (1976). We affirm his conviction but vacate his sentence and remand the case for resentencing before a different judge.

I

FACTS

Alverson was indicted on July 9, 1980, and tried on October 7–9, 1980. Testimony revealed that on June 29, 1980, James Alverson, accompanied by Nancy Alverson, entered the Accuracy Gun Store in Las Vegas. He requested to leave a Thompson .45 caliber machine gun for sale on consignment. Prior to leaving the store, defendant dismantled the machine gun and replaced one part with another. The part was identified as a "disconnect," which prevents a gun from firing more than one shot per function of the trigger. Nancy Alverson signed for the Thompson left on consignment at the store. Alverson took a store employee to his automobile to show him three other weapons that he had left in his car.

After the defendant left the store, the store manager contacted the Bureau of Alcohol, Tobacco, and Firearms. Federal agent James Deal responded to the call and seized the .45 caliber Thompson. The following day Alverson returned to the store and demanded return of the Thompson. Agent Deal was notified and promptly returned to the store with the weapon. A store employee returned the Thompson to Alverson, who was arrested after taking possession of the gun.

While en route to the Las Vegas Federal Building, defendant admitted that he had other firearms at his residence. Based on this information, Agent Deal secured a search warrant and searched a trailer home which the Government contends was defendant's residence. Nancy Alverson was present at the trailer during the search. At the conclusion of the search, Agent Deal seized several weapons, including three machine guns. An employee of the Accuracy Gun Store testified that these guns were of the same type as those Alverson had shown him the previous day. A jury found Alverson guilty on four counts of possession of unregistered machine guns, one count for each of the three weapons seized at the trailer home, and one count for the Thompson left at the gun store.

On December 8, 1980, the district court judge sentenced Alverson to five years on each of the four counts of possession. The judge then stated, "the sentence imposed as to Counts 2, 3 and 4 is to run consecutively with the sentence on Count 1." On December 11 the judge, purporting to correct an ambiguity in the original sentence, resentenced appellant to five years on each count, with each sentence to run consecutively. The defendant filed a timely appeal of his conviction and his sentence.

II

SUFFICIENCY OF THE EVIDENCE

Defendant Alverson's contention that there was insufficient evidence to sustain his conviction raises two factual questions. First, did the Government prove that the .45 caliber Thompson was a machine gun as defined in 26 U.S.C. § 5845(b) (1976)? Second, did the Government prove defendant's constructive possession of the other three weapons seized in a search of the trailer home alleged to be defendant's residence?

In reviewing the sufficiency of the evidence, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh evi-

dence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original) (citation omitted). *Accord, United States v. Buras,* 633 F.2d 1356, 1359 (9th Cir. 1980); *United States v. Kipp,* 624 F.2d 84, 84 (9th Cir. 1980) (per curiam).

### A. *The Thompson .45 Caliber Weapon*

Section 5845(b) of Title 26 defines a "machine gun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." Alverson argues that the Government offered insufficient proof that the Thompson .45 caliber weapon fit this definition. No one disputes that the Thompson, in the condition in which it was left at the gun store, did not fire "more than one shot ... by a single function of the trigger." The Government contends, however, that its evidence proves either that the gun could be "readily restored to shoot automatically" or that the gun did function automatically when Alverson brought it to the gun store and before he replaced the disconnect.

■ The following evidence was adduced: (1) when defendant first brought the weapon to the store, he stated that he and his son had just been firing it and that "while his son was shooting it he held down the trigger too long." This statement makes sense only in reference to a weapon that fires more than one shot per function of the trigger. (2) In the presence of gun store employees, defendant removed the disconnect from the gun and replaced it because "you don't want [the Thompson] like this," or "it was fixed." The second disconnect differed from the first in that it "had a smaller hump on it." A Government firearms expert testified that the function

of a disconnect was to prevent the weapon from firing fully automatically. He also testified that the Thompson "probably" would fire fully automatically if it had a disconnect on which the hump had been "filed down." Finally, the Government's expert testified that a "shaved off" disconnect, in conjunction with the polished interior surfaces he actually observed on the Thompson, "would convert it into fully automatic." (3) Defendant had the knowledge to convert semi-automatic weapons to fully automatic, and had done so on previous occasions. (4) A gun store employee testified that appellant gave, as a reason for having his wife sign for the Thompson, the fact that "he had spent 18 months in Lompoc for possession of a machine gun." From this evidence, a rational trier of fact could conclude, beyond a reasonable doubt, that the Thompson could be "readily restored to shoot automatically." [1]

### B. *Constructive Possession of the Other Weapons*

■ Possession of firearms in violation of section 5861(d) "need not be [proved by] exclusive actual possession, but may be [proved by] constructive or joint possession." *United States v. Kalama,* 549 F.2d 594, 596 (9th Cir.), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564 (1977). " 'In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises ... in which contraband is concealed.' ... [D]ominion and control over [defendant's] own residence, in which the guns were found, is a sufficient basis for the jury's inference of constructive possession." *United States v. Smith,* 591 F.2d 1105, 1107 (5th Cir. 1979) (quoting *United States v. Ferg,* 504 F.2d 914, 916–17 (5th Cir. 1974)).[2]

---

1. Alternatively, the jury could have concluded from the evidence that the Thompson was fully automatic when the defendant first brought it into the gun store.

2. While proof that a particular residence is that of the defendant might not always provide sufficient evidence to establish constructive pos-

session of *every* item in the residence, *see United States v. Craven,* 478 F.2d 1329, 1333 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973), we need not address that issue here. Alverson only argues that the trailer was not his residence; he does not dispute the conclusion that if the trailer was his residence, the Government has proved his con-

The defendant argues that the Government's evidence fails to show that the residence in which the three additional weapons were seized was his.

■ The Government's evidence shows that defendant admitted to federal agents following his arrest "that he had four or five more firearms at his residence." The agents then secured a search warrant for a trailer at 1286 South Mojave Road. The only direct evidence of defendant's address was an official record, the Las Vegas Metropolitan Police Department's "convicted persons questionnaire," which lists appellant's address at 1286 South Mojave Road, *space 131*. The weapons, however, were seized in a trailer at *space 121*. The Government points to additional circumstantial evidence that the trailer at space 121 was, in fact, Alverson's residence. First, Nancy Alverson was present in the trailer with her son. Defendant notes that there was no direct evidence linking Nancy Alverson with James Alverson, and emphasizes the possibility that the two were not living together. However, Nancy Alverson did accompany the defendant to several gun stores, and weapons were purchased in her name at those times. In addition, witnesses referred to defendant as Nancy Alverson's husband. Finally, the defendant showed to an employee of the gun store, on the day he left the Thompson for sale on consignment, weapons similar to those later seized at the trailer.

This court and other circuits have found similar evidence sufficient to sustain an inference of constructive possession. *See United States v. LaGue*, 472 F.2d 151, 152 (9th Cir. 1973); *United States v. Smith*, 591 F.2d at 1106–07. We find that a rational trier of fact could conclude beyond a reasonable doubt from this evidence that Alverson had constructive possession of the weapons seized at the trailer.

structive possession of the weapons found there.

**3.** Defendant does not object to being tried on multiple counts of possession. *See, e.g., United*

## III

### THE SENTENCING CLAIMS

The district court ultimately sentenced defendant to five years imprisonment on each of four counts of possession, with the sentences to be served consecutively. Alverson raises three objections to this sentence. First, he argues that Congress did not intend section 5861(d) to authorize separate and consecutive sentences for each of several firearms possessed simultaneously. Second, defendant argues that the district court violated the double jeopardy clause when it purported to clarify its original ambiguous sentence. Finally, defendant contends that he must be resentenced because the district court communicated with a federal agent prior to final sentencing. We consider each objection in turn.

### A. Multiple Sentences Under Section 5861(d)

■ Alverson argues that even if he constructively possessed the three weapons seized in the trailer search, there was only one act of possession since the weapons were possessed at the same time and place. Accordingly, defendant argues that a conviction and sentence for each weapon possessed is impermissible.[3] This court has no general authority to review sentences so long as the sentence conforms to statute. *United States v. Wylie*, 625 F.2d 1371, 1379 (9th Cir. 1980), *cert. denied* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). The issue, then, is one of statutory interpretation: did Congress authorize separate punishment for each of several firearms simultaneously possessed at the same place?

Two circuits have addressed this question and concluded that Congress intended each firearm to be a unit of prosecution under section 5861(d). *United States v. Tarrant*, 460 F.2d 701, 704 (5th Cir. 1972); *Sanders v. United States*, 441 F.2d 412, 414–15 (10th Cir.), *cert. denied*, 404 U.S. 846, 92 S.Ct. 147,

*States v. Jones*, 487 F.2d 676, 679 (9th Cir. 1973); *United States v. Smith*, 591 F.2d 1105, 1108 (5th Cir. 1979).

30 L.Ed.2d 82 (1971). To interpret the statute, we "must look to the wording of the provision violated . . ., the overall statutory scheme, and the legislative history." *Brown v. United States*, 623 F.2d 54, 57 (9th Cir. 1980) (footnote omitted); *United States v. Clements*, 471 F.2d 1253, 1254 (9th Cir. 1972).

■ We conclude that section 5861(d) expresses an unambiguous congressional intent to make each firearm a unit of prosecution.[4] First, the statute states that "[i]t shall be unlawful for any person—(d) to receive or possess *a* firearm . . . ." 26 U.S.C. § 5861(d) (1976) (emphasis added). Use of the article "a" stands in marked contrast to language in other weapons statutes that have been interpreted to preclude prosecution for each object of the offense. *Compare United States v. Brown*, 623 F.2d at 58 (use of "any") *with Sanders v. United States*, 441. F.2d at 414–15 (use of "a").

Second, the overall statutory scheme corroborates our reading of section 5861(d). *See United States v. Brown*, 623 F.2d at 57 n.1. We have held that section 5861(d) "is a valid exercise of the power of Congress to tax." *United States v. Tous*, 461 F.2d 656, 657 (9th Cir. 1972) (per curiam); *accord, United States v. Petrucci*, 486 F.2d 329, 331 (9th Cir. 1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974). Section 5861(d) is a part of the web of regulation aiding enforcement of the transfer tax provisions in section 5811 of Title 26. *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir.), *cert. denied*, 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972). Section 5811 levies a separate tax on "each firearm transferred." 26 U.S.C. § 5811(a) (1976). Possession of each unregistered firearm therefore deprives the government of a separate tax. Accordingly, prosecution for each unregistered weapon encourages payment of the

tax and effective implementation of the statutory scheme. *United States v. Tarrant*, 460 F.2d at 704. For these reasons, we hold that the defendant properly was prosecuted and sentenced for each firearm he possessed in violation of section 5861(d).

## B. Double Jeopardy

When the district judge sentenced the defendant, he stated, "[t]he sentence imposed as to Counts 2, 3, and 4 is to run consecutively with the sentence on Count 1." Later, the prosecutor asked "[c]ould we clarify the record? I believe you sentenced as to 1, 2, 3, and 4 for five years. I'm not sure the record is clear as to which counts run consecutive and which concurrent." The judge responded, "[a]s to Counts 2, 3, and 4, they run consecutively with Count 1." Three days later, the judge recalled the defendant to the court and, after acknowledging confusion about the original sentence, set it aside and resentenced defendant to five years on each of the four counts with the sentence on each count to run consecutively to that on the preceding count. The defendant argues that this resentencing enhanced his punishment in violation of the double jeopardy clause.

■ Not every change in an original sentence violates the double jeopardy clause. For example, under certain circumstances, correction of an illegal sentence does not violate double jeopardy, even if the corrected sentence increases the punishment. *United States v. Connolly*, 618 F.2d 553, 555 n.8 (9th Cir. 1980) (sentence increased to meet statutory minimum); *United States v. Stevens*, 548 F.2d 1360, 1362 & n.8, 1363 (9th Cir.), *cert. denied*, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977) (sentence increased to meet plea agreement). This rule holds even where the defendant has begun to serve the original

---

4. Defendant relies on cases arising under 18 U.S.C. §§ 922(h)(1) (1976) and 1202(a)(1) (1976 App.) to argue that each firearm should not be a unit of prosecution. Defendant's argument is erroneous because it relies on cases dealing with an ambiguous statute. *See, e.g., United States v. Hodges*, 628 F.2d 350 (5th Cir. 1980) (§§ 922(h), 1202(a)(1) App.); *United States v.*

*Bullock*, 615 F.2d 1082 (5th Cir.), *cert. denied*, 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980) (§ 1202(a)(1) App.); *United States v. Mason*, 611 F.2d 49 (4th Cir. 1979) (§ 922(h)(1)). We do not find section 5861(d) similarly ambiguous. *See Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

sentence. *United States v. Stevens*, 548 F.2d at 1362–63. The Eighth Circuit recently indicated that a sentence is illegal if it is so ambiguous that it fails to reveal its meaning "with fair certainty." *United States v. Moss*, 614 F.2d 171, 175, 176 n.4 (8th Cir. 1980) (quoting *United States v. Daugherty*, 269 U.S. 360, 363, 46 S.Ct. 156, 157, 70 L.Ed. 309 (1926)). Correction of an illegally ambiguous sentence does not violate double jeopardy because the initial ambiguous sentence is of no effect. *United States v. Solomon*, 468 F.2d 848, 851 (7th Cir. 1972) *cert. denied*, 410 U.S. 986, 93 S.Ct. 1513, 36 L.Ed.2d 182 (1973); *see Scarponi v. United States*, 313 F.2d 950, 953 (10th Cir. 1963). We agree that a sentence may be illegal by virtue of its ambiguity and that correction of such a sentence does not implicate double jeopardy.

 The defendant's original sentence was ambiguous. The prosecutor's request for clarification stemmed from his uncertainty as to its meaning. Unfortunately, the response to the clarification request simply repeated the ambiguity. It is not possible to tell whether the defendant was sentenced to a maximum of ten or a maximum of twenty years. Under these circumstances we hold that the original sentence was illegal; its subsequent correction, therefore, was permissible.[5]

## C. Ex Parte *Communications*

 Prior to resentencing, Agent Deal of the Bureau of Alcohol, Firearms, and

Tobacco met with the district judge to discuss defendant's case. The discussion included the fact that the defendant was a suspect in a homicide investigation. This meeting occurred without any notice to defendant and was not known to him until after the second sentencing.[6] The defendant claims that Agent Deal's *ex parte* communication with the judge requires resentencing.

Before sentencing, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *accord, United States v. Ferreboeuf*, 632 F.2d 832, 837 (9th Cir. 1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 368 (1981).

Even so, there are constraints on the process through which the trial judge determines the sentence. For example, a sentence will be vacated if the judge considered "false or unreliable information," if the information was "demonstrably made the basis for the sentence." *Farrow v. United States*, 580 F.2d 1339, 1359 (9th Cir. 1978) (*en banc*); *see United States v. Conforte*, 624 F.2d 869, 883 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). In *United States v. Wolfson*, 634 F.2d 1217 (9th Cir. 1980),[7] this court required resentencing where the dis-

---

**5.** The fact that we find the district court's correction of its original sentence permissible does not mean that we approve of the district court's sentencing procedures in this case. A trial judge is obligated to give an intelligible sentence. Where he or she fails to do this, speedy correction of the error may avoid the necessity of resentencing but it does not erase the fact that the judge has been careless and has created unnecessary confusion and perhaps created false expectations.

**6.** The Government contends that this court should not consider defendant's argument because it depends on material outside the record and because the district court has not yet had an opportunity to consider the issue. We note that the affidavit of defendant's counsel regarding the *ex parte* communication is contained in the record transmitted to this court by the clerk

of the district court. We note also that the Government concedes in its brief that (1) the alleged *ex parte* communication occurred, and (2) the communication involved the fact that the defendant was a suspect in a homicide investigation. Thus, while the affidavit regarding the *ex parte* communication did not meet the technical requirements of Fed.R.App.Proc. 10(c), we do not rely exclusively on the affidavit because both parties acknowledge the two essential facts relevant to our disposition of the *ex parte* communication issue. Accordingly, we consider defendant's claim on its merits rather than await possible review in subsequent post-conviction proceedings.

**7.** *Wolfson* was decided after the sentencing we review today. *United States v. Wolfson*, 634 F.2d 1217 (9th Cir. 1980).

trict court received an *ex parte* communication from the prosecution bearing on the sentence. There we held that "it is improper for the prosecution to make, or for the court to receive from the prosecution, an *ex parte* communication bearing on the sentence." *Id.* at 1221. We find the rule in *Wolfson* controlling in this case.

The Government offers three bases for distinguishing *Wolfson*, none of which are persuasive. First, the Government points out that the *ex parte* communication in this case came, not from the prosecutor as in *Wolfson*, but from the case agent. We do not find the difference between these sources significant; the interest of both the prosecutor and the case agent is directly adverse to the interest of the defendant.

The Government next argues that because the presentence report contained in substance the same information conveyed to the judge in the *ex parte* communication, defendant has not been prejudiced. Both the presentence report and the *ex parte* communication indicated that the defendant was a suspect in an ongoing homicide investigation. At the original sentencing on December 8, 1980, the judge disclaimed reliance on this information contained in the presentence report. The judge made no mention of the *ex parte* communication, however, at the second sentencing. We decline to speculate whether this communication had any effect on the judge. In any event, we do not find the prior disclaimer effective as to the subsequent *ex parte* communication.

Finally, the Government argues that this case falls within the rule of *United States v. Dubrofsky*, 581 F.2d 208 (9th Cir. 1978). In *Dubrofsky* this court refused to require resentencing even though the district judge considered a derogatory confidential report that was not available to the defendant. *Id.* at 215. *Dubrofsky* is inapposite in this case, however. Here, the sentencing judge, after receiving the derogatory *ex parte* information, neither explained his refusal to disclose the information, nor cited other information as the primary basis for the sentence imposed. Both of these factors were crucial to the court's decision in *Dubrofsky*; their absence here therefore precludes reliance on the *Dubrofsky* rationale.

Because there is no persuasive basis on which to distinguish *Wolfson*, we hold that the rule of that case, prohibiting *ex parte* communications between the prosecutor and the sentencing judge, applies here to the communication with the case agent and requires resentencing.

Ordinarily resentencing would be by the same district judge. This circuit recognizes, however, that in "unusual circumstances" resentencing before a different judge may be necessary. *United States v. Larios*, 640 F.2d 938, 943–44 (9th Cir. 1981). In *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979), we articulated three factors to consider in deciding whether resentencing by a new judge is appropriate: "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." 628 F.2d at 1165 (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc)). The first two of these factors are of equal importance, *United States v. Ferguson*, 624 F.2d 81, 83 (9th Cir. 1980); only one of the first two factors need be present. *United States v. Wolfson*, 634 F.2d at 1222. However, countervailing values of judicial efficiency and feasibility can outweigh concerns for the appearance of fairness "when reassignment would entail waste and duplication out of proportion to the gain in preserving the appearance of fairness." *United States v. Ferguson*, 624 F.2d at 83–84.

In this case, much as in *Wolfson*, we find resentencing before a new judge necessary to preserve the appearance

of justice. Although here the judge was resentencing to remove an ambiguity, the corrected sentence interprets the ambiguous sentence to impose the longest sentence possible. In view of the intervening improper *ex parte* communication with the judge, the appearance of justice is served by referral to another judge for resentencing. In our view, this consideration of fairness outweighs any duplication of effort. The case is not complex; nor are the factors involved in resentencing especially difficult. Accordingly, we vacate the sentence and remand the case for resentencing by another judge.[8]

## CONCLUSION

Defendant's conviction is affirmed; his sentence is vacated and the case is remanded for resentencing in conformity with this opinion.

ADAMS, Circuit Judge, concurring and dissenting.

I concur in the fine opinion by Judge Fletcher in all respects except for the last portion which mandates, when this case is returned to the district court, that a new judge be assigned for the resentencing. I cannot join in this directive for two main reasons. First, I consider it at variance with the cases in this Circuit. Second, even aside from the decided cases, it would appear inappropriate, in the absence of a compelling reason—and I do not believe that the record here contains a compelling reason—for this matter to be assigned by an appellate court to a new trial judge.

As the majority states, the Ninth Circuit rule providing for remand to a new judge is reserved for "unusual circumstances," *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1980). According to *United States v. Larios*, 640 F.2d 938, 943 (9th Cir. 1981), three criteria must be analyzed and then balanced in making a determination wheth-

er "unusual circumstances" are present. I realize that, by invoking language relating to the second of these criteria—*i.e.*, "the appearance of justice"—the majority purports to be following *United States v. Wolfson*, 634 F.2d 1217, 1222 (9th Cir. 1981). Nonetheless, largely because *Larios* was decided after *Wolfson*, the elaborate analysis employed in *Larios* would appear to be more appropriate in the present case than the approach employed in *Wolfson*.

My concern centers in large part on the first of the three criteria set forth in *Larios*, namely, "whether the original judge could reasonably be expected to put out of his mind previously expressed views or findings that were subsequently found to be erroneous," *Larios* at 943. In this case, the fact of Alverson's involvement in a homicide matter was not, under the cases, improperly submitted to the judge by way of a presentencing report. I agree that it was improper for the agent to discuss this matter *ex parte* with the trial judge. I also agree that, because we do not know whether the trial judge relied on information provided by the agent, there should be a resentencing. However, there is absolutely no indication that anything in fact was brought to the attention of the trial judge by the agent that the judge did not already know, and which would in some way prejudice him and prevent his imposing a sentence appropriately. Certainly, there is nothing on *this record* to indicate that the trial judge learned something by the ex parte communication that he should not have known. Moreover, even had he gained such knowledge, there is nothing on *this record* to indicate he was in fact prejudiced or might be prejudiced by such knowledge. In this connection, it is instructive to consider *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), where the Supreme Court remanded for reconsidera-

---

**8.** We note that the district court's December 11, 1980 resentencing is valid except for the court's improper consideration of *ex parte* communications. Moreover, the defendant is no longer in the court's custody. Upon resentencing, therefore, the defendant cannot receive a

total sentence in excess of twenty years without a violation of double jeopardy. *United States v. Munoz-Dela Rosa*, 495 F.2d 253, 255 (9th Cir. 1974); *Kennedy v. United States*, 330 F.2d 26, 27 (9th Cir. 1964).

tion of a sentence when the district judge explicitly took into account two of the defendant's prior convictions, which were later determined to be constitutionally invalid. The Supreme Court, nonetheless, remanded for resentencing by the *same* judge, despite the observation of the dissent that nothing would be served by returning the matter to the original judge. 404 U.S. at 452, 92 S.Ct. at 594 (Blackmun, J., dissenting). In *Tucker* it was clear that the trial judge did have knowledge of improper prior convictions, yet the overwhelming majority of the Supreme Court did not consider this fact sufficient to require a new sentencing judge.

The third factor enumerated in *Larios* also needs to be considered. I am not convinced that "reassignment would [not] entail waste of duplication of effort out of proportion to the gain realized in preserving the appearance of fairness," *Larios* at 943. By transferring a case such as this to a new judge, we require the new judge to become completely familiar with the entire record—no small burden in a proceeding such as the present one. Moreover, if the practice employed by the majority were applied uniformly, and no reason is suggested why it should not be, then in districts where only one judge sits, it would be necessary to bring in a judge from another district, at no small cost and no little delay.

Even in the absence of Ninth Circuit cases which now provide the guidelines for re-assigning remanded cases, I would suggest the practice of assigning new judges on remand should be utilized in a most cautious manner. Here the trial judge conducted the three day trial which resulted in the conviction. He heard the evidence, and saw and heard 12 witnesses. To eliminate this whole reservoir of knowledge solely on the basis of an observation that the appearance of justice might be served thereby, would seem to exalt the views of an appellate court over time-tested practice and the practicalities of the situation. At most, it

* The Honorable Elbert Parr Tuttle, Senior Circuit Judge, United States Court of Appeals for

would seem adequate to direct the trial judge to consider whether the resentencing should be assigned to a new judge.

Accordingly, I respectfully dissent from the directive that resentencing in this matter be performed by a different judge.