UNITED STATES of America, Plaintiff—Appellee,

v.

Newton James CANTRELL, Sr., Defendant—Appellant.

United States of America, Plaintiff—Appellee,

v.

Donna Shawl Cantrell, Defendant— Appellant.

United States of America, Plaintiff—Appellee,

v.

Jeanine Lucille Renz, Defendant— Appellant.

United States of America, Plaintiff—Appellee,

v.

Theresa Ann Walker, Defendant— Appellant.

United States of America, Plaintiff—Appellee,

v.

Jack V. Coversup, Defendant— Appellant.

United States of America,
Plaintiff—Appellee,

v.

James Daniel Murphy, Defendant—
Appellant.

United States of America,
Plaintiff—Appellee,

v.

Angela Daniel Walker, Defendant—
Appellant.

Nos. 03–30562, 04–30028, 03–30568,
03–30567, 03–30565, 04–30026,
03–30563.
D.C. No. CR–03–00027–SEH.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2005.

Decided Aug. 22, 2005.

Marcia Good Hurd, USBI–Office of the U.S. Attorney, Billings, MT, for Plaintiff–Appellee.

Palmer A. Hoovestal, Edmund F. Sheehy, Jr., James Obie, Esq., J. Mayo Ashley, Helena, MT, Mark D. Meyer, Ugrin, Alexander, Zadick & Higgins, P.C., Great Falls, MT, Deirdre Caughlan, Butte, MT, Daniel P. Buckley, Foust Buckley Law Office, Bozeman, MT, for Defendants–Appellants.

Before PREGERSON, GRABER, and GOULD, Circuit Judges.

## MEMORANDUM [*]

Newton Cantrell ("N. Cantrell"), Donna Cantrell ("D. Cantrell"), Angela Walker ("A. Walker"), Theresa Walker ("T. Walker"), Jack Coversup, Jeanine Renz, and James Murphy appeal their jury convictions and sentences for conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and other related charges. The defendants raise is-

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

sues of suppression of evidence, limitations on cross-examination during trial, variance, jury instructions, sufficiency of the evidence, and forfeiture. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the convictions.[1]

## I

■ We first address Coversup and T. Walker's contention that the district court erred in denying their motions to suppress evidence found in a search of Coversup's vehicle that took place in Glasgow, Montana.[2] As an initial matter, there was reasonable suspicion for the police to stop Coversup. Ron Kemp, Chief of police for the city of Wolf Point, Montana, witnessed Coversup meeting with N. Cantrell, a known drug dealer, and engaging in what Kemp reasonably believed to be a drug transaction. An informant had told the police that N. Cantrell would be transporting drugs through the area on about the date that this meeting took place, and the police knew that N. Cantrell had come to Glasgow for the purpose of seeing Coversup. Under these circumstances, the officers had a particularized and objective basis for suspecting Coversup of drug trafficking when they stopped his vehicle. *See United States v. Arvizu*, 534 U.S. 266, 273–74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

T. Walker argues that we should not consider the gas station exchange between N. Cantrell and Coversup in making our reasonable suspicion determination. She claims that the encounter was "innocuous" and further claims that the district court

clearly erred in finding that Officer Kemp reasonably believed the encounter to be a drug transaction. However, it is irrelevant for the purposes of the reasonable suspicion inquiry whether N. Cantrell and Coversup were, in fact, merely exchanging innocent greetings because "[t]he test is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior." *United States v. Sutton*, 794 F.2d 1415, 1427 (9th Cir.1986). What matters is that the suspicion was reasonable.

Additionally, the district court's finding that Kemp reasonably believed that a drug transaction had occurred between N. Cantrell and Coversup was not clearly erroneous. Although Kemp did not see anything change hands, he observed N. Cantrell and Coversup exchanging a hand gesture similar to a handshake where each man extended both hands towards the other, and it is plausible that an experienced officer could reasonably view such an exchange as a drug transaction. *See SEC v. Rubera*, 350 F.3d 1084, 1093–94 (9th Cir.2003) ("So long as the district court's view of the evidence is plausible in light of the record viewed in its entirety, it cannot be clearly erroneous....").

We also reject T. Walker's assertion that the district court clearly erred in finding that the police were aware at the time Coversup was stopped that N. Cantrell had come to Glasgow to meet with Coversup. Even if Kemp was unaware of N. Cantrell's purpose in coming to Glasgow

---

1. We will address the defendants' contentions relating to sentencing in a disposition that will be filed subsequently.

2. While we review the question of whether reasonable suspicion existed for an investigatory stop de novo, the factual determinations underlying the inquiry are reviewed for clear

error. *United States v. Diaz–Juarez*, 299 F.3d 1138, 1140 (9th Cir.2002). The validity of a defendant's consent to search depends on the totality of the circumstances, and is a question of fact reviewed for clear error. *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir.2000).

when Kemp requested the stop, our case law does not require that each officer involved in executing a stop be aware of all the facts giving rise to reasonable suspicion for the stop to be legal. Rather, the rule is that reasonable suspicion can be based on the *collective* knowledge of all officers involved in effectuating a stop. *Sutton*, 794 F.2d at 1426. Because the officer who earlier stopped N. Cantrell and D. Cantrell told Undersheriff Vernon Buerkle that N. Cantrell was in town visiting Coversup, before Buerkle made the final decision to pull Coversup over, it is proper for us to rely on this fact in assessing reasonable suspicion.

T. Walker cites *Ybarra v. Illinois*, for its holding that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). But, in contrast to *Ybarra*, this case involves an investigatory stop, not a search, and reasonable suspicion is a lesser standard than probable cause. *See Arvizu*, 534 U.S. at 274, 122 S.Ct. 744. Furthermore, unlike with the appellant in *Ybarra*, the police did not target Coversup just because he happened to be in the same place as a known drug dealer. They stopped him because they had knowledge of facts that established a direct connection between him and a known dealer: N. Cantrell came to Glasgow to meet Coversup and the two were seen engaging in what appeared to be a drug transaction. *Cf. Ybarra*, 444 U.S. at 91, 100 S.Ct. 338 (invalidating search where police "knew nothing in particular about [the appellant], except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale").

Coversup's claim that the stop was an illegal pretextual stop likewise fails. This case does not present a pretextual stop problem because the officers' reasonable suspicion that Coversup was engaged in drug trafficking gave them a legal basis for the stop that is wholly separate from the potential twenty-day sticker violation. *See United States v. Cannon*, 29 F.3d 472, 474 (9th Cir.1994) ("A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime *for which they do not have the reasonable suspicion necessary to support a stop.*" (emphasis added)).

■ Having concluded that the stop of Coversup's vehicle was reasonable under the totality of the circumstances, we next consider whether Coversup voluntarily consented to the search of his vehicle. *See United States v. Chan–Jimenez*, 125 F.3d 1324, 1327 (9th Cir.1997) (outlining factors to be considered in determining whether a defendant voluntarily consented to a search). Coversup was not "in custody" at the time he gave his consent. Kemp did tell Coversup that he suspected that Coversup was transporting drugs, but neither Kemp nor Buerkle said anything that might have indicated to Coversup that he would not be permitted to leave after a brief interrogation. *See United States v. Hayden*, 260 F.3d 1062, 1066–67 (9th Cir.2001). Buerkle returned Coversup's license and paperwork to him, and no pressure or force was exerted to keep Coversup at the scene of the stop. When Coversup denied having had dinner with N. Cantrell or having met with N. Cantrell at the gas station, the officers did not "confront" him with the fact that D. Cantrell had told police about the dinner and that Kemp had witnessed the gas station exchange. The questioning took place on

the side of a public road, and Coversup had been detained for less than thirty minutes when he verbally consented to the search and signed the consent form.

*Miranda* warnings were not given, but were not required because Coversup was not in custody. *See United States v. Crawford,* 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc), *cert. denied,* —— U.S. ——, 125 S.Ct. 863, 160 L.Ed.2d 783 (2005). Also, the officers did not draw their weapons, Coversup was told that he did not have to consent, and neither Kemp nor Buerkle told Coversup that they would get a warrant if he refused to consent to the search. The weight of the evidence shows that Coversup voluntarily agreed to the search of his vehicle. The district court's decision to deny the motions to suppress was proper.

## II

■ We turn to N. Cantrell's argument that the district court violated his right to confront witnesses by (1) limiting his cross-examination on the terms of Bryce Granbois' plea agreement; and (2) refusing to admit the plea agreements of Granbois, Taffy Hamilton, and Leroy Youpee. Assuming for the sake of argument that the limitations were too restrictive, they were harmless beyond a reasonable doubt. *See United States v. Jenkins,* 884 F.2d 433, 436 (9th Cir.1989) (explaining that Confrontation Clause errors are subject to harmless error analysis). Leaving Granbois, Hamilton, and Youpee aside, thirty witnesses testified for the government, and many gave testimony that corroborated that of the others in detail. Additional-

ly, the gap in N. Cantrell's cross-examination of Granbois was filled when another defendant cross-examined Granbois about the details of his plea agreement.[3] *See Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (explaining that the issue whether the constitutionally improper denial of a defendant's opportunity to confront a witness "is harmless in a particular case depends upon a host of factors ... includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case").

## III

■ We now consider D. Cantrell's assertion that she is entitled to a reversal of her conviction under Count XXVIII of the indictment because of an asserted variance between the indictment's charge and the proof at trial. D. Cantrell argues that because the indictment charged her with possessing not just the Ruger .22 handgun, but also two rifles, the jury should not have been permitted to convict her of this count without finding that she possessed all three guns. We disagree. "The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as [D. Cantrell's] indictment did, the verdict stands if the evidence is sufficient with respect to any

---

**3.** N. Cantrell's reliance on the Third Circuit's decision in *United States v. Chandler,* 326 F.3d 210 (3d Cir.2003), is misplaced. In *Chandler,* the Third Circuit reversed a defendant's conviction for drug trafficking after determining that the district court's decision to restrict the defendant's cross-examination of two govern-

ment witnesses resulted in Confrontation Clause error that was not harmless because the witnesses' testimony constituted the only direct evidence of the defendant's involvement in drug trafficking. *Id.* at 224–25. Here, on the other hand, there is ample direct evidence of N. Cantrell's drug activities.

one of the acts charged." *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) (upholding conviction where indictment charged defendant with possessing, purchasing, dispensing, and distributing heroin but the only evidence at trial was of the defendant's possession of the drug); *see also United States v. Long,* 301 F.3d 1095, 1106 (9th Cir.2002) (per curiam) (upholding conviction where indictment charged that defendant had "use[d] and carr[ied]" a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) and the evidence at trial met the legal standard for "carry" though not for "use"). There is sufficient evidence here to support the charge that D. Cantrell possessed the Ruger handgun in furtherance of her drug trafficking activities.

■ D. Cantrell was in constructive possession of the Ruger .22 handgun found in the trailer that she alone owned and occupied. *See United States v. Alverson,* 666 F.2d 341, 345 & n. 2 (9th Cir.1982) (holding that the government can establish constructive possession by "produc[ing] evidence showing ownership, dominion, or control over ... the premises ... in which contraband is concealed"). That D. Cantrell's grandson happened to be present when the police searched the trailer does not undermine that D. Cantrell had the requisite dominion and control over the trailer to establish her constructive possession of the Ruger .22 handgun found therein. *See id.* at 346 (holding that defendant constructively possessed guns notwithstanding that others were present in the trailer at the time of the search where there was no evidence that those persons were joint occupants). *United States v. Reese,* 775 F.2d 1066, 1073–74 & n. 6 (9th Cir.1985), is distinguishable because it involved firearms found in a residence with joint occupants. Also, whereas in *Reese*

there was an "absence of any evidence more specifically connecting [the defendant] to the firearms," *id.* at 1074, here, testimony from Bernadine Bear and Carmen Cantrell that they saw a .22 handgun in D. Cantrell's bedroom supports an inference that the .22 handgun found by the police was D. Cantrell's, and not a weapon brought over to D. Cantrell's residence by a visitor.

It matters little that Bear never identified the .22 Ruger handgun at trial as the same weapon she saw in D. Cantrell's bedroom. Carmen Cantrell testified that she saw a .22 "Luger" handgun in D. Cantrell's bedroom and, in any event, the government was not required to establish that the handgun possessed by D. Cantrell was a Ruger. "For purposes of § 924(c)(1), the *type* of firearm used, e.g., machine gun as opposed to ordinary handgun, is an element of the offense on which a jury instruction and finding is required," because different types of firearms carry different penalties under the statute. *United States v. Perez,* 129 F.3d 1340, 1342 (9th Cir.1997) (per curiam) (emphasis added). However, this rule does not extend to the specific *make* or *model* of the firearm. *See Soper v. United States,* 220 F.2d 158, 161 (9th Cir.1955) (sustaining defendants' convictions against sufficiency of the evidence challenges despite lack of evidence that rifle used by defendants was an "M–1" as charged in the indictment because "the expression 'M–1' was surplusage which—since appellants were not prejudiced thereby—could be disregarded" (footnote omitted)). Thus evidence that D. Cantrell possessed a .22 handgun is sufficient to support her conviction under 18 U.S.C. § 924(c)(1)(A)(i).

■ There is also sufficient evidence of a nexus between D. Cantrell's possession of the Ruger .22 handgun and the drug trafficking offenses of which she was con-

victed. Bear testified that D. Cantrell kept a .22 handgun in her bedroom where she kept her supply of methamphetamine, a safe containing the proceeds from her drug sales, and other valuables she had received in exchange for drugs. The police investigators who searched D. Cantrell's residence testified that they found drugs and drug trafficking paraphernalia in D. Cantrell's bedroom, and a loaded Ruger .22 handgun, next to a box of ammunition in the living room where they also found a large amount of methamphetamine. When viewed in the light most favorable to the government, *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this testimony tends to show that D. Cantrell had kept a .22 handgun readily available in her home proximate to drugs and drug trafficking materials, and gives sufficient basis for a rational jury to conclude that the handgun was possessed "in furtherance of" D. Cantrell's drug trafficking, *see United States v. Krouse,*[4] 370 F.3d 965, 967–69 (9th Cir.) (holding that there was evidence of nexus where defendant kept firearms and ammu-

nition within easy reach in the room where he ran his drug trafficking operation and stored drugs and drug trafficking paraphernalia), *cert. denied,* —— U.S. ——, 125 S.Ct. 513, 160 L.Ed.2d 373 (2004). Because the evidence is sufficient to establish that D. Cantrell possessed a .22 handgun in furtherance of her drug trafficking activities, "[t]he status of the case with respect to the other allegations [in the indictment about the rifles] is irrelevant to the validity of [D. Cantrell's] conviction" on the gun count.[5] *Turner,* 396 U.S. at 420–21, 90 S.Ct. 642.

## IV

■ N. Cantrell's claim that the district court erred in denying his request for an entrapment instruction fails because N. Cantrell cannot meet his burden of showing that he was induced to sell drugs to the undercover agent, Carmen Halvorsen Stump, and that he lacked the predisposition to sell drugs.[6] N. Cantrell has not presented any evidence of inducement; although Stump offered him opportunities to sell drugs by initiating undercover buys,

---

4. Although D. Cantrell's analysis on the sufficiency of the evidence supporting her conviction for possession of the handgun is based on the Supreme Court's *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), decision, that decision addressed the separate issue of what it means to "use or carry" a firearm "during and in relation to" a drug trafficking crime under 18 U.S.C. § 924(c), and is inapplicable here.

5. The Supreme Court's decision in *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), does not affect this conclusion because the facts of that case are inapposite. In *Stirone* the district court instructed the jury that it could convict the defendant by finding that the defendant had interfered with the interstate shipment of steel even though that offense was never charged in his indictment. *Id.* at 213. In contrast, the indictment in this case clearly charged D. Cantrell with possessing the .22 handgun she

was convicted of possessing. D. Cantrell's conviction under 18 U.S.C. § 924(c)(1)(A)(i) must stand.

6. The standard of review of the district court's denial of a proposed jury instruction turns on the nature of the error alleged. *See United States v. Somsamouth,* 352 F.3d 1271, 1274 (9th Cir.2003), *cert. denied,* 541 U.S. 1000, 124 S.Ct. 2049, 158 L.Ed.2d 513 (2004). In this circuit, there are two lines of cases setting out different standards of review. *United States v. Hoyt,* 879 F.2d 505, 509 (9th Cir.), *amended,* 888 F.2d 1257 (9th Cir.1989); *see also United States v. Gurolla,* 333 F.3d 944, 956 n. 18 (9th Cir.), *cert. denied,* 540 U.S. 995, 124 S.Ct. 496, 157 L.Ed.2d 395 (2003). One line holds that review is de novo, the other holds that it is for abuse of discretion. *Hoyt,* 879 F.2d at 509. It is not necessary to resolve the conflict in this case, however, because the result is the same under either standard.

she did not otherwise engage in any behavior likely to induce an otherwise law-abiding person to sell drugs. *See United States v. Poehlman,* 217 F.3d 692, 701 (9th Cir.2000) ("Where government agents merely make themselves available to participate in a criminal transaction, such as standing ready to buy or sell illegal drugs, they do not induce commission of the crime.... An 'inducement' consists of an 'opportunity' *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive."); *Hoyt,* 879 F.2d at 510 n. 3 ("A solicitation, request or approach by law enforcement officials to engage in criminal activity standing alone is not an inducement.").

N. Cantrell's lack-of-predisposition claim is similarly unconvincing. *See Gurolla,* 333 F.3d at 955 (listing factors relevant to the predisposition inquiry). The record is replete with evidence showing that N. Cantrell was known in the community and to law enforcement as a drug dealer before August 2001, when Stump made the first undercover buy from him. One witness testified that he had been selling marijuana for N. Cantrell since 1997. Another witness testified that he began purchasing drugs from his cousin in 1996, and that N. Cantrell was one of his cousin's suppliers.

There are videotapes of Stump's interactions with N. Cantrell showing that N. Cantrell was a ready and willing participant in for-profit drug transactions, and N. Cantrell is captured on one of the tapes describing himself as being in the "business" of selling drugs. Also, N. Cantrell never displayed any reluctance to sell drugs to Stump. During one videotaped meeting Stump had with N. Cantrell, N. Cantrell expressed concern that Stump was a "narc" and that she "might have been wearing a wire," but his consternation did not prevent him from proceeding to sell her a quarter-pound of marijuana. The district court properly denied N. Cantrell's proposed entrapment instruction.

## V

Defendants D. Cantrell, A. Walker, Murphy, and Renz argue that there is insufficient evidence to support their convictions for conspiracy to distribute drugs.[7] D. Cantrell also argues that there is insufficient evidence to support her conviction for possession with intent to distribute methamphetamine, and A. Walker argues that there is insufficient evidence to support the jury's determination that she should be held accountable for 500 or more grams of methamphetamine. We reject these claims.[8]

---

7. Claims of insufficient evidence are reviewed de novo. *United States v. Naghani,* 361 F.3d 1255, 1261 (9th Cir.), *cert. denied,* —— U.S. ——, 125 S.Ct. 341, 160 L.Ed.2d 247 (2004). The evidence is sufficient to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. "[A]ll reasonable inferences are to be drawn in favor of the government, and any conflicts in the evidence are to be resolved in favor of the jury's verdict." *United States v. Alvarez–Valenzuela,* 231 F.3d 1198, 1201–02 (9th Cir.2000).

8. Although T. Walker adopted A. Walker's sufficiency of the evidence arguments in her reply brief, "we will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Laboa v. Calderon,* 224 F.3d 972, 980 n. 6 (9th Cir.2000) (internal quotation marks omitted). Moreover, a general, conclusory assertion of error unsupported by specific reasons, references to authorities, and parts of the record is insufficient to preserve a matter for appeal. *See Bear Lake Watch, Inc. v. FERC,* 324 F.3d 1071, 1077 n. 8 (9th Cir. 2003) (refusing to reach issue that "was not really briefed, although it was mentioned" because "[m]ention is not enough"); *United*

D. Cantrell concedes that there was substantial evidence that she had purchased and sold methamphetamine and marijuana, but asserts that she cannot be convicted of a conspiracy to distribute these drugs because there is no evidence that she entered into an agreement with one or more other persons to further distribute the drugs to others. This argument is belied by the record, which contains testimony that D. Cantrell and N. Cantrell took turns purchasing drugs, from Morales, that they divided and resold. There is also testimony that D. Cantrell directed her daughters and others to repackage the large quantities of drugs she acquired from Morales into baggies and bindles of varying sizes, and to help her sell those smaller packages. Viewing this evidence in the light most favorable to the government, a rational trier of fact could have found D. Cantrell guilty beyond a reasonable doubt of having an agreement with her co-defendants and others to distribute the drugs she acquired from Morales. *Cf. United States v. Lennick*, 18 F.3d 814, 818 (9th Cir.1994).

D. Cantrell argues in the alternative that her convictions under Counts I and II cannot stand even if there is sufficient evidence that she was party to agreements to distribute methamphetamine and marijuana, because the record as a whole shows that there were multiple conspiracies rather than the single overall conspiracy charged in the indictment. But, standing alone, facts such as that D. Cantrell and N. Cantrell maintained separate residences, and that N. Cantrell's daughter Carmen may have "sold methamphetamine for Newton Cantrell but not for Donna

Cantrell and not involving any of the other defendants," are not inconsistent with a jury finding of a single, overarching conspiracy, and are therefore insufficient grounds for reversing D. Cantrell's convictions. *See United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir.1984) ("A single conspiracy may involve several subagreements or subgroups of conspirators."); *United States v. Friedman*, 593 F.2d 109, 117 (9th Cir.1979) ("[T]he performance by a conspirator of separate and independent acts in furtherance of the conspiracy is not inconsistent with the existence of a single overall agreement.").

D. Cantrell urges that these facts are evidence that she and N. Cantrell were running separate drug trafficking operations, but other facts in the record link her drug activities with those of N. Cantrell. For example, D. Cantrell was with N. Cantrell when he engaged in the alleged drug transaction with Coversup that resulted in the stop and search of Coversup's vehicle. There is also testimony that D. Cantrell was the one to pursue revenge when a safe containing drugs and drug trafficking profits was stolen from N. Cantrell's residence. Because this evidence could have led a rational trier of fact to find that D. Cantrell and N. Cantrell were responsible for orchestrating a single, continuing drug trafficking operation with the other defendants named in Counts I and II, D. Cantrell's conspiracy convictions must stand.

A. Walker, Murphy, and Renz's conspiracy convictions also must stand. These defendants cannot avail themselves of the "innocent associate" or "mere presence" doctrine because there is sufficient evi-

*States v. Panaro*, 266 F.3d 939, 951–52 (9th Cir.2001) (declining to review district court's allegedly erroneous admission of hearsay statements where appellant made only general assertions of error and failed to identify the particular statements he was seeking to chal-

lenge). A. Walker's briefing does not give us an adequate basis for reviewing T. Walker's sufficiency claims because these claims turn on defendant-specific facts. Accordingly, we decline to reach the merits of T. Walker's challenges to the sufficiency of the evidence.

dence in the record to show that they were all "part of the conspiracy and . . . intended to further it." *United States v. Herrera–Gonzalez,* 263 F.3d 1092, 1095–96 (9th Cir.2001). Carmen Cantrell testified that A. Walker had accompanied her and D. Cantrell on a trip to acquire drugs from Morales, and that A. Walker had observed the transactions taking place. In addition, Bear gave testimony that A. Walker helped D. Cantrell repackage and sell drugs. With respect to Murphy, there was undisputed trial testimony that Murphy had told law enforcement that he had purchased and delivered marijuana and acted as the "money man, collector of money" for the conspiracy. Finally, as for Renz's relationship to the conspiracy, Granbois, Hamilton, and Carmen Cantrell all testified that they believed Renz was selling drugs on behalf of D. Cantrell. Carmen Cantrell and Bear also testified that Renz assisted D. Cantrell in repackaging methamphetamine.[9]

A. Walker's challenge to the jury's decision to attribute her with 500 grams or more of methamphetamine similarly fails. Notwithstanding the lack of testimony ascribing precise drug quantities to A. Walker, there was ample evidence to show that A. Walker directly participated in the conspiracy's efforts to distribute methamphetamine and marijuana well in excess of 500 grams. There was testimony at trial that A. Walker went on several drug pick-ups and that each pickup involved several pounds of both methamphetamine and marijuana. There was also testimony that A. Walker regularly helped repackage marijuana and methamphetamine contained in pound-size packages, and that she assisted in selling the drugs once they were repackaged.

There was sufficient evidence to support D. Cantrell's conviction under Count XXII for possessing the methamphetamine recovered from her residence, with the intent to distribute it. As explained above, the rule preventing the imputation of possession to the occupant of a residence where contraband is found because of the presence of others applies only when the other persons are co-occupants with ownership and control over the premises, not mere visitors. *Compare Reese,* 775 F.2d at 1074 & n. 6, *with Alverson,* 666 F.2d at 345. Also, the testimony in the record that D. Cantrell repackaged, stored, and sold drugs out of her home establishes a connection between D. Cantrell and the drugs found at her residence. *Cf. Reese,* 775 F.2d at 1074.

## VI

■ Although N. Cantrell preserved his right to challenge the district court's April 7, 2004 order denying his motion for return of certain property and forfeiting that same property to the government by filing a timely notice of appeal on May 11, 2004, *United States v. Martinson,* 809 F.2d 1364, 1367 (9th Cir.1987), his argument fails on the merits.[10] The district court was authorized under the Criminal Justice Act ("CJA") to order the forfeiture of N. Cantrell's property to reimburse the government for providing him with counsel, 18

9. Despite Murphy, Renz, and A. Walker's attempts to discredit the witnesses who incriminated them, credibility is for the jury, and the standard of review requires us to view the evidence in the light most favorable to the government and to resolve any factual disputes in favor of the jury's verdict. *Alvarez–Valenzuela,* 231 F.3d at 1201–02.

10. The district court's denial of a motion for return of property is reviewed de novo. *United States v. Marshall,* 338 F.3d 990, 993 (9th Cir.2003), *cert. denied,* 541 U.S. 1000, 124 S.Ct. 2046, 158 L.Ed.2d 514 (2004).

U.S.C. § 3006A(f); *United States v. Palmer*, 588 F.2d 732, 733 (9th Cir.1978) (per curiam), notwithstanding that the government did not assert any claim in that property. The only precondition to the district court's exercise of its power to arrange compensation and reimbursement under the CJA was met when N. Cantrell's appointed counsel filed his CJA voucher seeking the payment of expenses he incurred in representing N. Cantrell. *See* 18 U.S.C. § 3006A(d)(5); *United States v. Walton (In re Baker)*, 693 F.2d 925, 927 (9th Cir.1982) (per curiam) (explaining that once appointed counsel submits a proper fee application, "[t]he district judge is then authorized, without any additional procedural requirements, to 'fix the compensation and reimbursement to be paid'") (quoting 18 U.S.C. § 3006A(d)(5)).

The district court was not only permitted to proceed with making compensation and reimbursement arrangements without the government's input, it was required to do so because "the Criminal Justice Act excludes the government from participation in the Act's compensation and reimbursement arrangements." *United States v. Feldman*, 788 F.2d 625, 626 (9th Cir.1986) (per curiam); *see also In re Baker*, 693 F.2d at 927 & n. 3 (holding that the district judge need not notify the government when a request for fees is made under the CJA and should "simply certif[y] the amount to be paid on the basis of the written application and his own judgment of the reasonableness of the fees" and stating in dicta that government is in any event "excluded . . . from any part in the [compensation or reimbursement] certification process in district court"). Accordingly, the government cannot be held to have "waived" the right to use N. Cantrell's

assets to cover the expenses of appointed counsel because of its failure to assert a claim in the assets on this basis when it was statutorily barred from making any such affirmative claim.

**CONVICTIONS AFFIRMED.**