427 So.2d 760 (1983)
STATE of Florida, Appellant,
v.
Kent Edward GRAPPIN, Appellee.
No. 81-2473.
District Court of Appeal of Florida, Second District.
January 26, 1983.
Rehearing Denied March 7, 1983.
*761 Jim Smith, Atty. Gen., Tallahassee, and David T. Weisbrod, Asst. Atty. Gen., Tampa, for appellant.
John Henninger of Robert W. Pope, P.A., St. Petersburg, for appellee.
HOBSON, Judge.
The state appeals an order granting Kent Edward Grappin's motion to dismiss a five-count information alleging that Grappin committed five thefts of the second degree by stealing five firearms during the same transaction. We reverse.
The state's five-count information charged that appellee stole five firearms from the residence of the owner on December 24, 1980, in multiple violation of section 812.014, Florida Statutes (1979).[1] Appellee moved to dismiss the information on the ground that "[i]t is the law in the State of Florida that where several items are taken at the same time and place as one continuous act, the offense is a single theft." At a hearing on the motion, the state conceded that the alleged unlawful taking of the firearms occurred during the course of a burglary of the owner's residence. Nevertheless, it vigorously contended that it could properly prosecute appellee on five counts of theft. The court, expressly relying on Hearn v. State, 55 So.2d 559 (Fla. 1951), rendered an order granting the motion without prejudice to the state to file an amended information. The state, not desiring to prosecute under an information charging a single theft of five firearms, appealed the order.
The portion of the 1979 theft statute which we deal with today reads:
812.014 Theft. 
(1)... .
(2)(a)... .
(b) It is grand theft of the second degree and a felony of the third degree, punishable as provided in ss. 775.082, 775.083, and 775.084, if the property stolen is:
1. Valued at $100 or more, but less than $20,000.
2. A will, codicil, or other testamentary instrument.
3. A firearm.[2]
4. A motor vehicle.
5. Any member of the genus Bos (cattle) or the genus Equus (horse), or any hybrid of the specified genera.
6. Any fire extinguisher.
7. Any amount of citrus fruit consisting of 2,000 or more individual pieces of fruit.
(c)... . (Emphasis added)
The issue we address on appeal concerns the allowable unit of prosecution under section 812.014(2)(b)3. Specifically, we must decide whether the unlawful taking of two or more firearms during the same transaction is subject to a separate prosecution (and punishment) under the theft statute as to each firearm so taken.[3]
*762 The state contends that the legislature intended to allow for separate prosecutions for the simultaneous unlawful taking of two or more firearms since it points out that the legislature specifically indicated that the unlawful taking of "[a] firearm" is a theft. Appellee asserts that the legislature did not so intend because he says that it did not clearly provide for separate prosecutions for the simultaneous unlawful taking of two or more firearms.
In Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), a celebrated case cited to by appellee, the United States Supreme Court confronted the issue of the allowable unit of prosecution in the context of a federal criminal statute. The Court in Bell tangled with provisions of the Mann Act making it illegal to transport "any woman or girl" interstate for illicit purposes. (Emphasis added) There, the petitioner had transported two women across state lines in the same vehicle during the same trip for immoral purposes. He contended that he had only committed a single violation of the Act. The respondent asserted that he had committed two violations. A majority of the Court deemed the relevant provisions of the Act "ambiguous" with respect to Congress' intent regarding the permissible unit of prosecution. Thus, it reversed the federal court of appeals' affirmance of the federal district court's order imposing consecutive terms of imprisonment for two violations. It held, applying the well-recognized principle of lenity, that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses... ." 349 U.S. at 84, 75 S.Ct. at 622. It cautioned, however, that its decision did not imply in any way that language employed in criminal statutes should not be read with "the saving grace of common sense." 349 U.S. at 83, 75 S.Ct. at 622.
Undoubtedly, where our own state legislature does not establish the allowable unit of prosecution with clarity, the ambiguity must be resolved in the accused's favor. It is also without question, however, that our legislature can treat the simultaneous unlawful taking of two or more of a particular object of property as separate thefts, given that the legislature alone establishes the permissible unit of prosecution.
In Hearn, relied upon by the court below in dismissing the information, and cited to by appellee, our state supreme court did not discuss the issue of the allowable unit of prosecution under the criminal statute in question. Instead, the court in Hearn merely endorsed the common law majority rule that where several articles are stolen at the same time and place, only one larceny is committed. The defendants in Hearn had simultaneously stolen nine cows and two calves belonging to separate owners. They were tried and convicted of larceny of a cow belonging to one of the owners. Thereafter, despite a timely double jeopardy plea, they were tried and convicted of larceny of the eight cows and two calves belonging to the other owner. The court reversed the second conviction on double jeopardy grounds.
We believe that Hearn, which antedated the enactment of the theft statute, conflicts with the legislature's intent regarding the allowable unit of prosecution under parts 2 through 4 of section 812.014(2)(b). Thus, since we deal today with part 3 of subsection (2)(b), Hearn necessarily yields.
Our legislature, in enacting section 812.014 in 1977, prefaced the respective item of property in parts 2 through 4 of subsection (2)(b) with the article "a" ("2. A will, codicil, or testamentary instrument." "3. A firearm." "4. A motor vehicle." [emphasis added]). In contrast, it prefaced the respective object of property in parts 5 through 7 with the article "any" ("5. Any member of the genus Bos [cattle] or the genus Equus [horse], or any hybrid of the specified genera."[4] "6. Any fire extinguisher." *763 "7. Any amount of citrus fruit consisting of 2,000 or more individual pieces of fruit." [emphasis added]).
The article "any," unlike the article "a," does not necessarily exclude any part of plural activity. Thus, the article "any," unlike the article "a," does not clearly express the allowable unit of prosecution in singular terms. Compare, e.g., Bell (see supra), United States v. Rosenbarger, 536 F.2d 715 (6th Cir.1976) (unlawful for convicted felon to possess "any firearm"; held, simultaneous possession of several firearms by convicted felon only one offense) and United States v. Kinsley, 518 F.2d 665 (8th Cir.1975) (same result as in Rosenbarger) with Sanders v. United States, 441 F.2d 412 (10th Cir.), cert. denied, 404 U.S. 846, 92 S.Ct. 147, 30 L.Ed.2d 82 (1971) (unlawful to possess "a firearm" which was unregistered; held, simultaneous possession of two unregistered firearms two offenses) and United States v. Alverson, 666 F.2d 341 (9th Cir.1982) (same result as in Sanders).
We do not believe that the legislature inadvertently inserted different articles in parts 2 through 4 and 5 through 7.[5] In our view, the legislature's use of the article "a" in parts 2 through 4 reveals its recognition of the distinction in meaning between the articles "any" and "a" for purposes of establishing the permissible unit of prosecution. In other words, its use of different articles signifies its intent, with respect to simultaneously pilfered firearms (or testamentary instruments or motor vehicles), to treat separately each stick in the bundle.
Therefore, notwithstanding Hearn, we hold today that a common sense reading of the plain language of section 812.014(2)(b) demonstrates that the legislature unmistakably intended for the simultaneous unlawful taking of more than one firearm to be subject to a separate prosecution (and punishment) as to each firearm so taken. One who reads subsection (2)(b) is not only placed on guard that the unlawful taking of a single firearm is a single violation of the theft statute but is also provided with a fair warning that the simultaneous stealing of several firearms is several violations of the theft statute. In short, a single firearm is the unit of prosecution.
We gather that the statutory scheme lends support to our holding. A firearm is subject to strict, comprehensive statutory regulations. See chapter 790, Fla. Stat. (1979). The same holds true for a motor vehicle. See chapters 319-320. If a firearm or motor vehicle is stolen, these respective important statutory requirements are circumvented or negated. A testamentary instrument, meanwhile, is a document upon which the smooth operation of the complex, statutory probate process depends when a person dies testate. See chapters 731-735. If a testamentary instrument is stolen, probate of a deceased's estate may be effectively frustrated. In light of these considerations, it is unreasonable to presume that the legislature intended to make simultaneously stolen firearms (or motor vehicles or testamentary instruments) cheaper by the dozen. We cannot ascertain any similarly-strong policy considerations within the statutory scheme which would favor application of the same unit of prosecution in a case involving the simultaneous unlawful taking of more than one cow, horse or fire extinguisher.[6]
*764 Accordingly, the order dismissing the five-count information is reversed and the cause is remanded with directions to allow the state to prosecute under a five-count information alleging five thefts.[7]
REVERSED and REMANDED.
OTT, C.J., and DANAHY, J., concur.
NOTES
[1] The five firearms alleged to have been unlawfully obtained by appellee included four 12-gauge shotguns and one .3006 rifle.
[2] "Firearm" is defined as

any weapon (including a starter gun) which will, or is designed to, or may readily be converted to, expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term "firearm" shall not include an antique firearm.
§ 790.001(6), Fla. Stat. (1979).
[3] Although the firearms were alleged to have been stolen during the same transaction, the single transaction rule is inapplicable here. (The single transaction rule, currently embodied in § 775.021[4], Fla. Stat. [1979], requires separate sentences for violations of "two or more criminal statutes," provided that one of the crimes is not a lesser included offense of the other. Appellee, of course, is not charged with having violated "two or more criminal statutes.")

The inapplicability of the single transaction rule does not necessarily implicitly preclude the imposition of separate sentences for simultaneous violations of the same statute. (For example, one who simultaneously murders five people is obviously subject to a separate punishment as to each murdered person.)
In any event, to avoid confusion concerning the applicability of this rule here, we shall henceforth use the word "simultaneous" or the phrase "same time and place" throughout the course of this opinion instead of the phrase "during the same transaction."
[4] Part 5 of § 812.014(2)(b) is the virtually identical successor to the larceny statute which the defendants violated in Hearn. The larceny statute in effect at that time prohibited the larceny of "any horse ... cow ... or calf." § 811.11, Fla. Stat. (1949). If appellee had been charged here with the simultaneous unlawful taking of several cows instead of the simultaneous pilfering of several firearms, Hearn would clearly control.
[5] Of course, with respect to part 7 of § 812.014(2)(b), but only with respect to part 7, it was immaterial which article the legislature used ("any" or "an") in establishing the allowable unit of prosecution, because it is factually impossible to commit simultaneous violations of part 7.
[6] Recently, Hearn has been cited to by our sister courts in support of the proposition that the simultaneous violation of different parts of § 812.014(2)(b) constitutes a single theft. See Drakes v. State, 400 So.2d 487 (Fla. 5th DCA 1981); Thomas v. State, 405 So.2d 1015 (Fla. 1st DCA 1981). See also Joiner v. State, 382 So.2d 1357 (Fla. 1st DCA 1981). In Drakes, the defendant was charged with two simultaneous thefts in respective violation of parts 1 and 3 of § 812.014(2)(b). Our sister court, pointing to Hearn, remarked in dicta that the theft of a firearm and other property at the same time and place amounted to a single theft. In Thomas, the defendant was convicted of two simultaneous thefts in respective violation of parts 1 and 3 of subsection (2)(b). The trial court sentenced him to consecutive terms of imprisonment. Our sister court, citing to Hearn and Drakes, vacated one of the terms of imprisonment, holding that the simultaneous violation of different parts of subsection (2)(b) is a single violation of the theft statute.

We do not believe that Hearn controls in a situation where a person simultaneously violates different parts of § 812.014(2)(b). A reading of subsection (2)(b) with any one of the seven parts provides a complete description of a violation of the theft statute. Contra, Thomas ("A reading of section 812.014(2)(b)1 or section 812.014(2)(b)3 in isolation would not provide a complete description of the offense." 405 So.2d at 1017.) Thus, when a person simultaneously violates two or more parts, he commits at least two or more thefts. For example, if a person simultaneously steals 1) property valued between $100 but less than $20,000, 2) three firearms, and 3) six fire extinguishers, he commits a total of five violations of the theft statute (i.e., one violation of subsection [2][b]1, three violations of [2][b]3, and one violation of [2][b]6.
[7] We stress here that our holding in no way excuses the state from its burden of proving the elements of theft (set out in subsection [1] of the theft statute) as to each alleged stolen firearm.