440 So.2d 505 (1983)
Willie WATTS, Appellant,
v.
STATE of Florida, Appellee.
No. AN-15.
District Court of Appeal of Florida, First District.
November 10, 1983.
Michael E. Allen, Public Defender, and Charlene V. Edwards, Asst. Public Defender, Tallahasee, for appellant.
Jim Smith, Atty. Gen., and Richard A. Patterson, Asst. Atty. Gen., Tallahassee, for appellee.
ROBERT P. SMITH, Jr., Judge.
Watts, a Union Correctional Institution inmate, was charged and tried on two counts of introducing into, or possessing, or attempting to take from the institution a contraband weapon, sec. 944.47(1)(a), (c), Fla. Stat. (1981).[1] On evidence that he was found simultaneously in possession of two prisonmade knives, Watts was adjudged guilty and concurrently sentenced on two counts of possession. On appeal he complains that two convictions are one too many. We agree.
*506 This issue is purely one of statutory interpretation. Since Watts' possession of knife a was an element of proof separable from his possession of knife b, there is no question of his having twice been placed in jeopardy for the same offense. Neither the fifth amendment of the United States Constitution nor article I, section 9 of the Florida Constitution forbids a double prosecution for conduct that is conceptually divisible into two offenses, each distinguished by a fact or element not present in the other. Albernaz v. State, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); Bell v. State, 437 So.2d 1057 (Fla. 1983); Borges v. State, 415 So.2d 1265, 1267 (Fla. 1982); McGee v. State, 435 So.2d 854 (Fla. 1st DCA 1983). Albernaz went so far as to say that finding a legislative purpose to make two offenses out of divisible elements in the defendant's conduct  a purpose typically but not necessarily evidenced by two separate statutes  concludes the constitutional inquiry. Albernaz, 450 U.S. at 344, 101 S.Ct. at 1145, 67 L.Ed.2d at 285:
Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.
Our Supreme Court's recent Bell decision demonstrates that double jeopardy vocabulary is yet necessary to explain why the legislature may not require, even by two statutes distinctively numbered or titled, two judgments for offenses one of which is necessarily included in the other. "[M]erely labeling statutes does not, and cannot, make offenses distinct when in fact they are identical." 437 So.2d at 1058. But we are not concerned here with two statutes or, indeed, with two differently-named offenses, such as were the subject of Bell's illuminating discussion. Possessing one knife obviously does not include possessing another. Our present task is to determine whether this single statute makes one offense or two out of the defendant's simultaneous possession, shown by coterminous proof, of two contraband knives. The appropriate question is not whether the legislature may constitutionally require the imposition of two judgments, but whether the legislature has done so.
Nor is the question how many sentences may be imposed upon two lawful judgments in consequence of the Florida legislature having rescinded, save for lesser included offenses, the single transaction rule. That judicial rule previously allowed sentencing for only the most serious of adjudicated offenses committed in a single transaction. Simmons v. State, 151 Fla. 778, 10 So.2d 436 (1942). Section 775.021(4), Florida Statutes (1981),[2] has now "abrogated the single transaction rule," Borges, 415 So.2d at 1266, and requires separate sentences upon properly adjudicated offenses within "one criminal transaction or episode" if the judgments are based on "two or more criminal statutes." Even absent Bell's double jeopardy questions, determining the appropriateness of two or more sentences can be difficult when the properly adjudicated offenses are catalogued in subsections of a single statute. See Thomas v. State, 405 So.2d 1015 (Fla. 1st DCA 1981), and Getz v. State, 428 So.2d 254 (Fla. 1st DCA 1982). But the convictions here, for Watts' simultaneous possession[3] of two prisonmade knives, are *507 unambiguously founded upon the same criminal statute, section 944.47(1)(c). For two reasons, therefore, section 775.021(4) cannot control whether Watts' conduct should be considered twice a violation of section 944.47(1)(c): first, because section 775.021(4) does not come into play unless judgments are properly entered "for violation of two or more criminal statutes"; and second, because section 775.021(4) does not say, except by excluding sentences for lesser included offenses,[4] how many judgments are to be entered for conduct that may be conceived, but need not be, as violating the same statute twice.
The question here, similar to that in Hearn v. State, 55 So.2d 559 (Fla. 1951), and identical to that in State v. Grappin, 427 So.2d 760, 761, n. 3 (Fla. 2d DCA 1982), is whether the substantive statute, section 944.47(1)(c), must be interpreted as making Watts' simultaneous possession of two contraband knives two units of prosecution[5] despite the absence of time or space differences in his possession, or in its proof, that in common understanding would distinguish his possession of one knife from his possession of the other. We say "must be interpreted" advisedly. A strict reading of the statute is required both by "the well-recognized principle of lenity," which in doubtful cases avoids "turning a single transaction into multiple offenses,"[6] and by the rule of statutory construction enacted by section 775.021(1):
The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
In defining certain other offenses the legislature has satisfactorily dealt with this issue by graduating the severity of the offense, conceived as one, according to the number of articles unlawfully possessed, §§ 831.08, .13, .15, .16, Fla. Stat. (1981) (10 or more forged bank bills or notes, etc., five or more uncurrent bank bills or notes, 10 or more, or less than 10, counterfeit coins); or according to the aggregated value of the affected property, §§ 812.012(9)(c), .014(2) (theft); or according to the weight of the contraband substance, §§ 893.13,.135 (possession of or trafficking in controlled substances). The legislature enacted no similar quantity-conscious element in the conduct proscribed by section 944.47(1)(c), but simply made it "unlawful for any inmate ... to be in actual or constructive possession," without authorization, of "[a]ny firearm or *508 weapon of any kind or any explosive substance." Supra, n. 1.
To this problem of statutory interpretation the courts have brought various analyses. Hearn, considering the defendant's simultaneous larceny of 10 cows and two calves, held there was one larceny though one cow was Adkinson's property and the other animals were Ganey's. Conceiving of the issue as one of double jeopardy rather than one of statutory interpretation  Hearn long antedated the United States Supreme Court decision in Albernaz  the court held that Hearn could not be prosecuted for stealing Ganey's cattle after having been convicted for stealing Adkinson's. There was but one offense "against the public," the court stated, and it was inconsequential that the cattle of two owners were taken. Three justices dissented without writing, so indicating, apparently, their dissatisfaction with turning the decision on the perception that "the offense is the same whether the property stolen belongs to one person or several persons jointly or to several persons each owning separate parts thereof." 55 So.2d at 561.
The Hearn court did not discuss the question more analogous to that presented here: whether Hearn's simultaneous theft or twelve head of cattle constituted one or twelve offenses under a statute proscribing "larceny by stealing any horse, mule, mare, filly, colt, cow, bull, ox, steer, heifer or calf, the property of another." Sec. 811.11, Fla. Stat. (1955).
Decisions since Hearn, touching the issue before us, were gathered in Judge Cowart's opinion for the court in Drakes v. State, 400 So.2d 487 (Fla. 5th DCA 1981). They include Hill v. State, 293 So.2d 79 (Fla. 3d DCA 1974); Avilia v. State, 278 So.2d 298 (Fla. 4th DCA 1973), and Russell v. State, 107 So.2d 801 (Fla. 2d DCA 1958). In Hill the court agreed with appellant's contention that two robbery counts "charged only a single offense" and that "one of the counts must be reversed," although two victims were simultaneously put in fear in the supermarket holdup. Though apparently asked to do so, the court did not reverse one of the judgments, but "remanded for resentencing with directions to treat count one and two as only a single offense." 293 So.2d at 80.
In Avilia, the court precisely addressed the separate judgments of guilt that were entered upon four counts of simultaneously receiving stolen property, divided by the information into "(Count 1) airline tickets of Hart Travel Agency, Inc., (Count 2) travelers checks of Travel Plans, Inc., (Count 3) checks of GAC Finance Corporation of Miami, and (Count 4) check of Atlantic Loan Company of North Dade." The court found that "since there is only one offense there can be only one adjudication and one sentence," 278 So.2d at 299, and remanded for that disposition.
Similarly in Russell, the court directed that "a judgment and sentence for the single offense of grand larceny" be entered for the defendant's simultaneous theft, from the same person, of one briefcase containing unmounted diamonds and a second briefcase containing diamond mounted rings. And in Drakes the court found that the simultaneous theft of disparate property  unspecified items aggregating a value of $100 or more, and a firearm  constituted "a single theft offense," though the defendant was found to have waived his "double jeopardy defense" by not moving to dismiss the information.
Each of these decisions on larceny and robbery elaborates Hearn's concept that "the offense is the same whether the property stolen belongs to one person or several persons... ." Hill applied the unitary larceny concept though two victims were robbed simultaneously; Avilia and Russell said that in a prosecution under a single statute for a simultaneous theft, the offense is not multiplied by the number of logically separable articles taken; and Drakes adhered to that concept though the property stolen was classified under two subsections, 1 and 3, of section 812.014(2)(b), proscribing larceny. The Drakes court, disposing of the case on another ground, did not discuss, as this court did later in Thomas, whether subsections 1 and 3 of section *509 812.014(2)(b) "each contain[s] a complete description of the offense, together with the applicable punishment," so constituting "two or more criminal statutes" within the meaning and application of section 775.021(4), supra n. 2, requiring separate sentences for "violation[s] of two or more criminal statutes." Thomas, 405 So.2d at 1016, 1017.
On other occasions the courts have searched legislative history for a hidden purpose to make one or multiple offenses out of conduct having some plural nature or effect. That method of attributing purpose to a criminal statute, on such an issue as this, has not been particularly fruitful.
For example, in Ladner v. United States, 358 U.S. 169, 173, 79 S.Ct. 209, 211, 3 L.Ed.2d 199, 203 (1958), the Supreme Court asked of a federal statute: "Did Congress mean that the single discharge of a shotgun would constitute one assault, and thus only one offense, regardless of the number of officers affected, or did Congress define a separate offense for each federal officer affected by the doing of the act?" The Court found "[t]he history is scant, consisting largely of an Attorney General's letter recommending the passage of legislation... ." 358 U.S. at 174-75, 79 S.Ct. at 212-13, 3 L.Ed.2d at 203.
The very text of 18 U.S.C. § 254 suggested that searching the legislative history would be inconclusive, for the text prohibited both resisting an officer in the performance of his duties and assaulting an officer with a deadly weapon. Though for sentencing purposes[7] the statute differentiated between slamming a door against a pursuing officer and shooting him with a shotgun, in the matter of one or multiple judgments the text showed no sensitivity to the presumably greater offense of shooting several officers with one blast and the presumably lesser offense of slamming a door against several. The Court stated:
We cannot find clearly from the statute, even when read in the light of its legislative history, that the Congress intended that the person locking the door might commit as many crimes as there are officers denied entry. And if we cannot find this meaning in the supposed case, we cannot find that Congress intended that a single act of assault affecting two officers constitutes two offenses under the statute. [358 U.S. at 176, 79 S.Ct. at 213, 3 L.Ed.2d at 204.]
On other occasions courts have been more sanguine about the meaning of legislative history. In United States v. Davis, 656 F.2d 153 (5th Cir.1981), for example, the court considered "whether Congress intended to allow consecutive sentencing for a simultaneous possession of two types of drugs," under 21 U.S.C. § 841 (a)(1). In Florida, that precise question presumably would be answered by reference to section 775.021(4), supra n. 2, and in this court by the Thomas inquiry, 405 So.2d 1017, whether the offenses are proscribed by "two or more criminal statutes." The problem of separate sentencing so discussed in Davis, absent a statute such as 775.021(4), is conceptually not different from the question here concerning the singularity or duality of offenses. In Davis the Fifth Circuit was persuaded by a House committee report that 21 U.S.C. § 841(a)(1) was "designed to deal in a comprehensive fashion with the growing menace of drug abuse in the United States," giving "maximum flexibility to judges, permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case." Davis, 656 F.2d at 159. On the strength of this document the court declared that a statute making it unlawful to "possess with intent to manufacture, distribute, or dispense, a controlled substance," intended "to provide trial judges with maximum flexibility in sentencing, and therefore intended to permit separate punishment for possession of each controlled substance," *510 so making simultaneous possession of marijuana and quaaludes "two acts which violate one statute," requiring separate sentences. 656 F.2d at 160.
In State v. Grappin, 427 So.2d 760 (Fla. 2d DCA 1983), our colleagues of the Second District held that the simultaneous theft of five firearms constituted five offenses under section 812.014(2)(b), Fla. Stat. (1979), describing second degree grand theft, a third degree felony. The court found decisive evidence of legislative purpose in the statute's reference to "a" firearm, instead of to "any" firearm, in listing items the theft of which constitutes that particular offense. The statute enforced in Hearn, said Grappin n. 4, "prohibited the larceny of `any horse ... cow ... or calf,'" and so was distinguishable:
The article "any," unlike the article "a," does not necessarily exclude any part of plural activity. Thus, the article "any," unlike the article "a," does not clearly express the allowable unit of prosecution in singular terms... .
We do not believe that the legislature inadvertently inserted different articles in parts 2 through 4 and 5 through 7 [of the statute quoted in Grappin, 427 So.2d at 761]... . In other words, its use of different articles signifies its intent, with respect to simultaneously pilfered firearms (or testamentary instruments or motor vehicles), to treat separately each stick in the bundle. [427 So.2d at 763.]
Grappin went on to find elsewhere in Florida Statutes a comparative importance given to firearms, testamentary papers, and motor vehicles, the objects described in section 812.014(2)(b) with the article "a," and relatively less importance attributed to cows, horses and fire extinguishers, described by the article "any." Thus the court found that stealing five firearms simultaneously was stealing "a firearm" five times, producing five units of prosecution.
Grappin's analysis presumably would produce but one unit of prosecution for Watts' simultaneous possession of two knives, for section 944.47, Fla. Stat. (1981), supra n. 1, prohibits the possession within a correctional institution of "any of the following articles," including "Any firearm or weapon of any kind" and various other "any" items. We choose not to place our decision upon Grappin's rationale attributing decisive meaning to the choice of "a" or "any."
Grappin, it would seem, is unduly confident about what legislation means by choosing "a" or "any." Quite aside from the fact that the legislature's first declaration in Florida Statutes is that "[the] singular includes the plural and vice versa," § 1.01(1), Fla. Stat. (1981), there are other problems. If as Grappin says the importance given to firearm control elsewhere in Florida Statutes confirms that multiple units of prosecution in a single theft are intended by describing "a firearm" in 812.014(2)(b), how shall we account for that attributed importance in the single unit of prosecution yielded by "any firearm or weapon of any kind" in 944.47? Is it to be supposed that, through this choice of "any" over "a," the legislature expressed less concern over the possession of multiple unauthorized firearms in a prison than over the theft of multiple firearms in society at large?
"Any" has variable uses in the language, as Grappin notes in withholding significance from its use in subsection 7 of 812.014(2)(b), "Any amount of citrus fruit consisting of 2,000 or more individual pieces of fruit." As the court said, "it is factually impossible to commit simultaneous violations of part 7." 427 So.2d at 763 n. 5. It is rather less clear why Grappin would deduce from "any" a single unit of prosecution in the simultaneous theft of several cows. The statute at hand did not speak of "any cow," as did the statute in Hearn, see Grappin at n. 4, rather it spoke of "any member of the genus Bos (cattle) or the genus Equus (horse), or any hybrid of the specified genera." Sec. 812.014(2)(b)5. It is not altogether clear why reference to "any member" of the genus is not an equivalent reference, in Grappin's analysis, to "a cow," "a steer," or "a bull." Other uses of "any," arguably variant from Grappin's attribution of a single unit of prosecution, appear *511 in sections 787.03(1) (interference with custody of "any child"), 790.05 (carrying "any pistol" without a license), 790.23(1) (a felon possessing "any firearm"), 806.01 (burning "any dwelling"), and so on.
Without detracting from the seriousness of Grappin's inquiry, we conclude that it is impossible to derive multiple units of prosecution, or single units, from the legislature's choice of "a" or "any" in listing items in a criminal statute.
We think rather that Castleberry v. State, 402 So.2d 1231 (Fla. 5th DCA 1981) takes the preferred approach, emphasizing "chronological and spatial relationships" in determining whether a multifaceted offense is a single prosecution unit, because simultaneous in time and space, or multiple, because not simultaneous. There the Fifth District emphasized how robbing a certain victim was committed simultaneously with stealing his auto, and so judged conceptually separable offenses as nevertheless a single prosecution unit.
Castleberry's way with "chronological and spatial relationships" does not make all things simple; indeed, one might quarrel that Castleberry robbed his victims only of their car keys, not the car taken subsequently, and that the robbery was complete when the car was stolen even though "the victims remained restrained [by Castleberry's ropes, not otherwise by Castleberry] and in far." 402 So.2d at 1232. So to Castleberry's analysis we would add only the further thought, developed earlier here, that distinguishing single from multiple units of prosecution is a matter for the legislature, not for adroit prosecutors or for wondering courts. Legislation defining crimes must therefore be read as strictly and as narrowly as reasonably possible, avoiding multiple charges for coterminous conduct unless the legislature's contrary purpose is clear  clearer, say, than in Grappin. This skeptical view of multiple prosecutions merely reinforces traditional judicial attitudes toward the construction of criminal statutes. See, e.g., Earnest v. State, 351 So.2d 957 (Fla. 1977); State ex rel. Lee v. Buchanan, 191 So.2d 33 (Fla. 1966); Whitehurst v. State, 105 Fla. 574, 141 So. 878 (1932); Ex parte Bailey, 39 Fla. 734, 23 So. 552 (1897).
Viewing Watts' convictions in this light, his possession of two knives was simultaneous in time and essentially simultaneous in space. Whether Watts might have possessed the knives separately in some sense we cannot say without undue speculation, for the prosecutor's proof of Watts' double possession was coterminous in both time and space. Watts was therefore subject to a single prosecution, and was vulnerable to but one judgment.
The judgment on count one is AFFIRMED; the judgment on count two is REVERSED.
ZEHMER, J., concurs.
WENTWORTH, J., concurs with opinion.
WENTWORTH, Judge, concurring.
Although I agree with the logic and law on which our disposition of this case rests, I would emphasize that legislative attention to the cited statute is clearly in order. It should express unambiguously the intention that "possession of any ... weapon" means (as we here say it "must be construed") the same as "possession of any ... weapon [or weapons]." Alternatively, some further distinction might be expressed if the intent is not that a prisoner's possession of a hundred knives in a mattress at one time and place should be equated precisely with the possession of one such weapon, so far as concerns the number of offenses chargeable.
NOTES
[1] § 944.47, Fla. Stat. (1981) provides in relevant part:

(1)(a) Except through regular channels as authorized by the officer in charge of the correctional institution, it is unlawful to introduce into or upon the grounds of any state correctional institution, or to take or attempt to take or send therefrom, any of the following articles which are hereby declared to be contraband for the purposes of this section, to wit:
.....
5. Any firearm or weapon of any kind or any explosive substance.
.....
(c) It is unlawful for any inmate of any state correctional institution or any person while upon the grounds of any state correctional institution to be in actual or constructive possession of any article or thing declared by this section to be contraband, except as authorized by the officer in charge of such correctional institution.
(2) Whoever violates any provision of this section is guilty of a felony of the third degree... .
[2] § 775.021(4), Fla. Stat. (1981), provides:

(4) Whoever, in the course of one criminal transaction or episode, commits an act or acts constituting a violation of two or more criminal statutes, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense, excluding lesser included offenses, committed during said criminal episode, and the sentencing judge may order the sentences to be served concurrently or consecutively.
[3] The multifaceted information filed against Watts serves to illustrate how the number of judgments may increase geometrically depending on whether each of Watts' two knives is considered a separate unit of prosecution.

Each of the two counts against Watts charged alternatively that he possessed a contraband knife, in violation of subsection (1)(c), or that he "did unlawfully introduce [a knife] into or upon ... or take or attempt to take [a knife] from the grounds" of the institution, in violation of (1)(a). Though here the proof was of simple possession only, other facts may have supported a prosecution both for possession of a knife, subsection (1)(c), and for attempting to take it, let us say through another's cooperation, from the grounds, subsection (1)(a). If circumstances can be conceived that would make Watts' possession of the knife independent of his attempt to smuggle it out of the prison, not a lesser included offense within the double jeopardy proscription expounded by Bell, then we might here be confronting not two but four judgments of conviction. We should then be required to determine both whether each knife represented an allowable unit of prosecution and whether the conduct in respect to that knife was singly or doubly proscribed by subsections (1)(a) and (1)(c). Though Thomas analyzed separate subsections of the same statute only to determine the propriety of two sentences, not that of two judgments, the analysis required would seem to be the same, absent double jeopardy considerations, on the question of two judgments in respect to each knife.
[4] Bell, 437 So.2d at 1058:

As we have stated before, the explicit exclusion of lesser included offenses in section 775.021(4) makes clear that the legislature does not intend separate convictions and punishments for two or more statutorily defined offenses when in fact only one crime has been committed. [Citing Borges v. State, 415 So.2d 1265, 1267 (Fla. 1982).] (Emphasis added.)
[5] The term "unit of prosecution" gained currency through Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910 (1955) (finding, in respect to one interstate transportation of two women for prostitution, one violation of 18 U.S.C. § 2421: the statute did not "make each stick in a faggot a single criminal unit"); and it was introduced in Florida by State v. Grappin, supra, 427 So.2d at 672 (finding, in respect to one theft of five firearms, five violations of Florida's § 812.014: the statute did "treat separately each stick in the bundle.")
[6] Grappin, supra, 427 So.2d at 762.
[7] The statute, quoted in n. 1 of Justice Brennan's opinion for the Court, does impose a greater sentence for using a deadly weapon, but that does not answer the question of whether two judgments and two aggravated sentences are appropriate when by a single shot two officers were wounded.