857 So.2d 249 (2003)
Kenneth L. BALDWIN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-4777.
District Court of Appeal of Florida, Second District.
September 5, 2003.
Rehearing Denied October 14, 2003.
*250 James Marion Moorman, Public Defender, and Frederick W. Vollrath, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
KELLY, Judge.
Kenneth L. Baldwin appeals his convictions and sentences for carrying a concealed weapon by a violent career criminal, possession of a firearm by a violent career criminal, driving while license suspended, and leaving the scene of a crash. We reverse Baldwin's conviction for carrying a concealed weapon by a violent career criminal and affirm without comment the other issues Baldwin has raised.
Baldwin's charges stem from an incident in which police found a gun concealed in a bag that Baldwin was carrying. Baldwin argues that his convictions for carrying a concealed weapon by a violent career criminal and possession of a firearm by a violent career criminal based on this single incident violate double jeopardy. We do not agree with Baldwin's contention that this case presents a double jeopardy issue. Nevertheless, we conclude that we must reverse his conviction for carrying a concealed weapon by a violent career criminal because the record demonstrates that the State did not prove the essential elements *251 of that offense. Specifically, the State did not prove that Baldwin possessed a concealed weapon.
Baldwin was charged with two violations of section 790.235, Florida Statutes (1999), which states in pertinent part:
(1) Any person who meets the violent career criminal criteria under s. 775.084(1)(d), regardless of whether such person is or has previously been sentenced as a violent career criminal, who owns or has in his or her care, custody, possession, or control any firearm or electric weapon or device, or carries a concealed weapon, including a tear gas gun or chemical weapon or device, commits a felony of the first degree.
(Emphasis added). Section 790.001, Florida Statutes (1999), defines the terms used in chapter 790. Section 790.001(13) defines a "weapon" as "any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife." (Emphasis added). Section 790.001(3)(a) defines "concealed weapon" as "any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon carried on or about a person in such a manner as to conceal the weapon from the ordinary sight of another person." (Emphasis added). Section 790.001 also defines "firearm" and "concealed firearm." § 790.001(2), (6). It is undisputed that Baldwin's gun constitutes a "firearm" as that term is defined in chapter 790 and that he was properly convicted for possession of a firearm by a violent career criminal in violation of section 790.235.
It is equally evident Baldwin's gun is not a "weapon" as that term is defined in chapter 790. See § 790.001(13). Because Baldwin's gun is not a "weapon," we conclude that it cannot be a "concealed weapon" either. Among the items listed in the definition of "concealed weapon," the only one that could possibly bring a gun within the ambit of "concealed weapon" is the category of "other deadly weapon." See § 790.001(3)(a). However, as noted above, chapter 790 specifically excludes firearms from the definition of "weapon." If a firearm is not a "weapon," under chapter 790, it cannot be included in the category of "other deadly weapon,"[1] and therefore, is not a "concealed weapon" as that term is defined in chapter 790.
Although the definition of "concealed weapon" differs from the definition of "weapon" in that it does not specifically exclude firearms and common pocketknives from the category of "other deadly weapon," we do not believe that the legislature intended for a gun to be a "firearm" when not concealed, but to be both a "weapon" and a "firearm" when concealed. To read the statute in this manner would violate the basic rule of statutory construction that courts should not construe a statute in a manner that leads to an absurd result. See Weber v. Dobbins, 616 So.2d 956, 958 (Fla.1993).
We are also guided by the principle that statutory phrases are to be read in the context of the entire section and they should be "`interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts.'" Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996) *252 (quoting State ex rel. City of Casselberry v. Mager, 356 So.2d 267, 269 n. 5 (Fla.1978)). Throughout chapter 790, the legislature repeatedly treats firearms and weapons as distinct from one another. Chapter 790 is titled "Weapons and Firearms." In addition to defining "weapon" and "concealed weapon," section 790.001 also defines "firearm" and "concealed firearm." If the legislature had equated a firearm with a concealed weapon a separate definition for "concealed firearm" would have been superfluous. Finally, section 790.01 refers to both concealed weapons and concealed firearms and provides that carrying a concealed weapon is a first-degree misdemeanor while carrying a concealed firearm is a third-degree felony. Thus, both the definitions contained in section 790.001 and the overall statutory scheme of chapter 790 lead to the conclusion that for the purposes of that chapter, a firearm is neither a "weapon" nor a "concealed weapon."
We also find support for our conclusion in this court's decision in State v. Ortiz, 504 So.2d 39 (Fla. 2d DCA 1987). In Ortiz, the defendant was charged with possession of a concealed weapon by a convicted felon in violation of section 790.23, Florida Statutes (1985). The defendant moved to dismiss the charge arguing that the knife he possessed was a common pocketknife and therefore was not a concealed weapon because common pocketknives are excepted from the definition of "weapon" in section 790.001(13). The trial court dismissed the charge. This court reversed, not because a common pocketknife fell within the definition of "concealed weapon," but because it concluded that whether the knife was a common pocketknife was a question of fact that must be resolved by a jury. Id. at 40. See also Walls v. State, 730 So.2d 294 (Fla. 1st DCA 1999) (stating that the definition of "weapon" in section 790.001(13) applies to the charge of carrying a concealed weapon).
Although we have no trouble concluding that given the facts of this case Baldwin could not properly be convicted of possession of a concealed weapon by a violent career criminal, we have found the question of whether we can afford Baldwin any relief to be problematic because Baldwin did not raise this specific issue either in the trial court or on appeal. In Dydek v. State, 400 So.2d 1255 (Fla. 2d DCA 1981), this court rejected the arguments the defendant raised in his appeal from convictions for possession of cocaine and drug paraphernalia. It nevertheless reversed the defendant's conviction for possession of drug paraphernalia after it determined that there was no evidence to establish a prima facie case that the defendant possessed paraphernalia. In reversing, this court stated:
[a]n appellate court will always consider a fundamental error that is apparent on the face of the record. Fundamental error has been defined as error which goes to the foundation of the case or to the merits of the cause of action. We can think of no error more fundamental than the conviction of a defendant in the absence of a prima facie showing of the essential elements of the crime charged.
Id. at 1258 (citations omitted). See also F.B. v. State, 852 So.2d 226, 2003 WL 21555122 (Fla. July 11, 2003). We find this reasoning applicable to this case as well, and accordingly we reverse and remand for the trial court to vacate Baldwin's judgment and sentence for possession of a concealed weapon by a violent career criminal.
Affirmed in part, reversed in part, and remanded.
FULMER, J., concurs.
SILBERMAN, J., concurs specially with opinion.
*253 SILBERMAN, Judge, concurring specially.
I agree with the majority's conclusion that Baldwin's convictions and sentences for carrying a concealed weapon by a violent career criminal and possession of a firearm by a violent career criminal cannot both be upheld. However, I disagree with the majority's reasoning and would reverse because section 790.235, Florida Statutes (1999), does not authorize separate convictions and sentences based upon one incident involving Baldwin's possession of a single gun. I also disagree with the majority's conclusion that a gun cannot be a concealed weapon under the statute.
"Where two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved ... by asking what act the legislature intended as the `unit of prosecution' under the statute." United States v. Weathers, 186 F.3d 948, 952 (D.C.Cir.1999) (citing Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)); see also State v. Grappin, 427 So.2d 760, 761 (Fla. 2d DCA 1983), approved, 450 So.2d 480 (Fla.1984); Burk v. State, 705 So.2d 1003, 1004 (Fla. 4th DCA 1998). Where the "legislature does not establish the allowable unit of prosecution with clarity, the ambiguity must be resolved in the accused's favor." Grappin, 427 So.2d at 762.
A plain reading of section 790.235 suggests that the legislature did not intend to create two separate offenses for the simultaneous conduct of possessing a firearm and carrying a concealed weapon when only one item is at the heart of the conduct. Section 790.235(1) provides the following:
Any person who meets the violent career criminal criteria under s. 775.084(1)(d), regardless of whether such person is or has previously been sentenced as a violent career criminal, who owns or has in his or her care, custody, possession, or control any firearm or electric weapon or device, or carries a concealed weapon, including a tear gas gun or chemical weapon or device, commits a felony of the first degree....
(Emphasis added).
It has long been established that "[t]he legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction, not only to the phraseology of an act but to the manner in which it is punctuated." Fla. State Racing Comm'n v. Bourquardez, 42 So.2d 87, 88-89 (Fla.1949). "`Or' when used in a statute is generally to be construed in the disjunctive." Telophase Soc'y of Fla., Inc. v. State Bd. of Funeral Dirs. & Embalmers, 334 So.2d 563, 566 (Fla.1976). Thus, by using "or" preceded by a comma, the legislature identified alternative ways to commit a single crime.
In writing the statute, the legislature did not separate the prohibited conduct identified by the statute into different subsections. In addition, it did not separately assign punishment for each form of conduct or punish one form of conduct more severely than the other. Rather, both forms of prohibited conduct are identified in one sentence and apply to a person who qualifies as a violent career criminal and who possesses a firearm or carries a concealed weapon. The statute indicates that such a person commits "a felony of the first degree," which is consistent with the analysis that a single unit of prosecution was intended.
Thus, it appears that the legislature identified two forms of conduct, either of which gives rise to a single unit of prosecution.[2] *254 While it may be possible for a defendant to be charged with multiple violations of section 790.235 based upon the simultaneous possession of more than one of the items identified in the statute, see Grappin, 427 So.2d at 763, that scenario is not present here because Baldwin possessed only one gun. Moreover, as this court noted in Grappin, to the extent that the statute is not clear as to the allowable unit of prosecution, the ambiguity must be resolved in the defendant's favor. Id. at 762.
Section 790.235 addresses two types of conduct that are relevant here: first, it prohibits a violent career criminal from possessing a firearm; second, it prohibits a violent career criminal from carrying a concealed weapon. In my view, under the pertinent rules of statutory construction, Baldwin's single incident involving a single gun gives rise to one unit of prosecution. The majority analysis differs and concludes that Baldwin could not be convicted of both crimes because the concealed gun, while qualifying as a firearm, does not qualify as a concealed weapon. The majority states that because a firearm is excluded from the statutory definition of weapon, it cannot qualify as a concealed weapon. Although this rationale has some logical appeal, it ignores the rules of statutory construction and a significant body of decisional law.
As noted by the majority, there are separate definitions for weapon, firearm, concealed weapon, and concealed firearm found in chapter 790. Section 790.001(13) defines "weapon" as "any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife." (Emphasis added). Section 790.001(3)(a) defines "concealed weapon" as "any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon carried on or about a person in such a manner as to conceal the weapon from the ordinary sight of another person." (Emphasis added).
The legislature's choice of language suggests that the legislature considers firearms and common pocketknives to be deadly weapons.[3] The definition of "weapon" contemplates that a firearm and common pocketknife would normally be included in the category of "deadly weapon" or there would have been no reason for the legislature to use the language "except a firearm or a common pocketknife." See § 790.001(13). Then, in defining "concealed weapon" to include deadly weapons, the legislature did not repeat the language excluding firearms or common pocket knives. See § 790.001(3)(a).
The statutory language suggests that the legislature intended a broader definition for "concealed weapon" than for "weapon." Even though a firearm does not fall within the statutory definition of "weapon" because of the exception contained in section 790.001(13), a firearm falls within the statutory definition of "concealed *255 weapon" because it is a deadly weapon and there is no exception in section 790.001(3)(a).
In State v. Bradford, 787 So.2d 811, 819 (Fla.2001) (quoting State v. Mark Marks, P.A., 698 So.2d 533, 541 (Fla.1997)), the supreme court reiterated that under "well-settled principles of statutory construction, this Court has held that `[t]he legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended.'" Applying this principle leads to the conclusion that the legislature's omission of the phrase "except a firearm or a common pocket knife" from the definition of "concealed weapon" is evidence of its intent to define "concealed weapon" more broadly than "weapon."
Similarly, in defining "concealed weapon," the legislature's use of the term "deadly weapon" instead of "weapon" is significant. If the legislature had wanted to incorporate the definition of "weapon" into the definition of "concealed weapon," it could have readily done so by stating, "`Concealed weapon' means any weapon carried on or about a person in such a manner as to conceal the weapon from the ordinary sight of another person."[4]
As noted by the majority, it is a principle of statutory construction that statutes "`should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts.'" Acosta v. Richter, 671 So.2d 149, 153-54 (Fla. 1996) (quoting State ex rel. City of Casselberry v. Mager, 356 So.2d 267, 269 n. 5 (Fla.1978)). However, the majority ignores the legislature's decision to define "concealed weapon" to include deadly weapons, without exception or limitation. Had the legislature intended the interpretation given by the majority, it could have simply done so by incorporating the definition of "weapon" into the definition of "concealed weapon" as shown by the example above. In Baker v. State, 636 So.2d 1342, 1343-44 (Fla. 1994), the supreme court stated that "[w]here the legislature has used particular words to define a term, the courts do not have the authority to redefine it." See also Armstrong v. City of Edgewater, 157 So.2d 422, 425 (Fla.1963) ("When there is doubt as to the legislative intent or where speculation is necessary, then the doubts should be resolved against the power of the court to supply missing words.").
The majority notes that cases have concluded that firearms are deadly weapons (and hence can be concealed weapons), but it dismisses the applicability of those cases because they dealt with criminal statutes outside of chapter 790.[5] However, M.P. v. State, 682 So.2d 79 (Fla.1996), involved a statute contained in chapter 790. There, *256 the Florida Supreme Court upheld a delinquency adjudication for carrying a concealed weapon, a firearm, in violation of section 790.01, Florida Statutes (1993), and an adjudication of delinquency for possession of a firearm by a minor in violation of section 790.22(3), Florida Statutes (Supp. 1994).
The adjudications "related to the same weapon and arose from the same incident." M.P., 682 So.2d at 80. But the supreme court concluded that the dual adjudications did not violate double jeopardy principles because the legislature expressed its intent in section 790.22(7), Florida Statutes (Supp.1994), "to punish a minor's possession of a firearm in addition to any other firearm-related offenses." Id. at 82 (emphasis added). In making this statement in the context of M.P.'s charges, the supreme court necessarily determined that carrying a concealed weapon was a firearm-related offense, which supports the conclusion that a firearm qualifies as a potential concealed weapon.
This construction is further supported by the supreme court's analysis of whether the two crimes before it contained different elements. The court specifically stated that M.P.'s possession of a firearm and carrying of a concealed weapon "share the common element of possession of a firearm." Id. However, the adjudications did not violate double jeopardy because the two offenses contained different elements and, unlike the present case, there was a specific legislative statement authorizing cumulative punishment under two statutes. Id.
Arguably, if the legislature disagreed with those cases which determined that firearms qualified as concealed weapons, it would have expressed its contrary intent in subsequent legislation. See Jones v. ETS of New Orleans, Inc., 793 So.2d 912, 917 (Fla.2001) ("[T]he legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed in the new version."). It appears that the legislature has not expressed that contrary intention.
The majority also asserts that in section 790.001, the legislature would not have separately defined "concealed firearm" if it had intended to include firearms in the definition of "concealed weapon." However, the legislature may simply have wanted to create a broader category for the crime of carrying a concealed weapon in order to punish a wider range of conduct, while punishing with greater severity, in appropriate circumstances, the more narrowly defined and arguably more dangerous conduct of carrying a concealed firearm.[6] Additionally, it is arguable that the legislature elected to give discretion or flexibility to prosecutors to initiate more severe or less severe charges and to pursue greater or lesser punishment for certain conduct, depending on the prosecutor's analysis of the relevant circumstances.
In my view, the statutory language can be reconciled, consistent with the rules of statutory construction and existing precedent, to support the conclusion that a firearm is a deadly weapon and, therefore, may be carried in a manner that qualifies *257 it as a concealed weapon. In the present case, involving one incident and one gun, I agree that Baldwin cannot be punished twice under section 790.235. Accordingly, while I disagree with the majority's analysis, I concur in the result.
NOTES
[1] It is important to note that our decision in this case is governed by the definitions contained in section 790.001, which apply to the provisions of chapter 790. We recognize that in other contexts a firearm may constitute a deadly weapon. For example, "[i]t is well settled that a firearm ... is a `deadly weapon' within the meaning of [section 784.045, Florida Statutes]," the aggravated assault statute. Riggins v. State, 557 So.2d 185, 185 (Fla. 3d DCA 1990).
[2] This differs from the situation in Skeens v. State, 556 So.2d 1113 (Fla.1990). There, the supreme court upheld convictions for carrying a concealed firearm under section 790.01(2), Florida Statutes (1983), and felon in possession of a firearm under section 790.23, Florida Statutes (1983). Although the convictions arose from the same conduct, the conduct violated two statutes that required proof of different elements.
[3] Case law recognizes that firearms are deadly weapons, as discussed later in this opinion. Additionally, case law recognizes that common pocketknives may qualify as deadly weapons, depending on their use. See, e.g., Martin v. State, 747 So.2d 474 (Fla. 5th DCA 1999); Durden v. State, 743 So.2d 77 (Fla. 1st DCA 1999); McCoy v. State, 493 So.2d 1093 (Fla. 4th DCA 1986); State v. Nixon, 295 So.2d 121 (Fla. 3d DCA 1974).
[4] Notably, the legislature did precisely this by incorporating another defined term when it defined "concealed firearm." Section 790.001(2) states, "`Concealed firearm' means any firearm, as defined in subsection (6), which is carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person."
[5] For example, in Webb v. State, 410 So.2d 944, 945 (Fla. 1st DCA 1982), the First District noted that the defendant's conviction for third-degree felony murder was predicated upon an aggravated battery by use of a deadly weapon, a firearm. Because a firearm was part of the proof of the underlying crime, which was an enhanced penalty offense, the court held that enhancement of the sentence for use of a firearm, under another statute, was improper. This court reached a similar conclusion in Rodriguez v. State, 701 So.2d 1194, 1195 (Fla. 2d DCA 1997), involving the use of a deadly weapon, again, a firearm. See also Greer v. State, 804 So.2d 620, 621 (Fla. 3d DCA 2002) (concluding that "there was substantial competent evidence to support the conclusion that the defendant used a deadly weapon, a firearm, during the course of the robbery").
[6] This is consistent with the fact that carrying a concealed weapon is a first-degree misdemeanor and carrying a concealed firearm is a third-degree felony. See 790.01, Fla. Stat. (1999). It is also consistent with the decision in M.P. which involved an adjudication for carrying a concealed weapon (a firearm) pursuant to section 790.01(1), Florida Statutes (1993), instead of carrying a concealed firearm under section 790.01(2), Florida Statutes (1993). See M.P., 682 So.2d at 80. Nothing in M.P. suggests that the charge should have been brought under section 790.01(2) as one of carrying a concealed firearm, and it is clear that in M.P., a firearm was the concealed weapon.